BUNDE, Respondent, vs. BUNDE, Appellant.

*May 4—June 1, 1955.*

228

For the appellant the cause was submitted on the brief of *Arthur T. Spence* of Milwaukee.

For the respondent there was a brief by *Love, Davis & McGraw* of Waukesha, and oral argument by *John C. Love.*

CURRIE, J.  The learned trial court grounded the order of December 10, 1954, amending the judgment of divorce so as to reduce the amount of alimony Mr. Bunde was required to pay to Mrs. Bunde, on the fact that a change in the financial status of the parties had occurred requiring such reduction.

Sec. 247.26, Stats., reads in part as follows:

". . . the court may further adjudge to the wife such alimony out of the estate of the husband, . . . and the court may finally divide and distribute the estate, . . . between the parties, . . . having always due regard to the legal and equitable rights of each party, the ability of the husband, *the special estate of the wife,* the character and situation of the parties and all the circumstances of the case." (Italics supplied.)

Inasmuch as this statute requires a trial court to give consideration to the amount of the separate estate of the wife in determining the amount of alimony, if any, that the husband should be required to pay under the provisions of a judgment of divorce about to be entered, it necessarily follows that, if, subsequent to the entry of such decree, there has been a material change in the financial status of the wife, the same constitutes sufficient ground for modifying the provisions of the judgment with respect to the alimony.

Counsel for Mr. Bunde contends that the reduction made was not adequate to reflect the extreme change in financial position of the parties, while the attorneys for Mrs. Bunde, in support of the motion for review, advance the argument that it was an abuse of discretion for the trial court to have made any reduction in such alimony.  These contentions will require a review of the relevant testimony bearing on the financial status of the parties.

At the time the original decree of divorce was entered in 1941, Mrs. Bunde's separate estate consisted of 250 shares of stock in Loomis-Sayles Mutual Fund, and 20,000 shares of capital stock of Waukesha Roxo Company already standing in her name, together with an additional 40,000 shares of such last-named corporation and a Mercury automobile, which Mr. Bunde was required under the judgment to deliver over to her. The only testimony in the record as to the value of the 60,000 shares of Waukesha Roxo Company stock is that Mrs. Bunde subsequently sold the same for $14,000. As a result of stock dividends, Mrs. Bunde subsequently received an additional 86 shares of Loomis-Sayles Mutual Fund stock so that she now owns 336 shares thereof. The only evidence as to value of the Loomis-Sayles Mutual Fund stock is that the 336 shares are presently worth $13,272. The evidence, therefore, would not justify a finding that Mrs. Bunde's net estate, exclusive of her interest in the Ida Finkler trust, exceeded $30,000 at the time the original divorce judgment was entered.

Ida Finkler, Mrs. Bunde's mother, had, prior to the judgment of divorce, placed $50,000 in trust for the equal benefit of Mrs. Bunde and the latter's brother. Under the terms of the trust the annual net income was to be distributed equally between Mrs. Bunde and her brother, and upon the death of Ida Finkler the principal was to be distributed to the beneficiaries. Mrs. Bunde's half share of such trust income averaged from $50 to $75 per month. Mrs. Bunde's brother died October 27, 1952, after which time she received all of the income from such trust. Ida Finkler died August 20, 1953, whereupon the corpus of such trust fund, which now amounts to approximately $46,000, became vested in Mrs. Bunde. The maximum valuation which could be fairly placed upon Mrs. Bunde's half interest in the Ida Finkler trust at the time the divorce decree was entered in 1941 would be

$25,000, so that Mrs. Bunde's aggregate maximum net worth at such time did not excede $55,000.

In contrast to such maximum net worth of $55,000 in 1951, Mrs. Bunde's present net worth is approximately $190,000, consisting of the following:

Balance of corpus in Ida Finkler trust.........$  46,419.13
Inheritance from Ida Finkler estate after deduction made of a reserve of $25,105.47 to pay estimated estate-inheritance taxes, fees, and expenses............................ 126,988.80
Separately owned securities, including the 336 shares of Loomis-Sayles Mutual Fund...... 17,399.00

Total net worth............$190,806.93

At the hearings, Mrs. Bunde's counsel maintained that the $25,105.47 reserve in the Ida Finkler estate for taxes, fees, and expenses, might be inadequate for that purpose, and to cover claims filed against the estate, and that as much as $10,000 in addition to the reserve of $25,105.47 might be required to pay all the liabilities and expenses of the estate. This, if true, would reduce Mrs. Bunde's net inheritance listed above at $126,988.80 by a maximum sum of $10,000. While there is absolutely no evidence to substantiate such contention, it is only fair to state that we would arrive at the same conclusion on this appeal if Mrs. Bunde's present net worth were approximately $180,000 instead of $190,000.

We now turn to consideration of Mr. Bunde's net worth both as of the date of the divorce decree in 1941, and as of the present time. As of the former date, such net worth was approximately $234,000, assuming that his 1,471 shares of capital stock in Bunde & Upmeyer Company, representing approximately 70 per cent of the issued and outstanding stock of such corporation, were then worth the amount for which they were sold in 1954. His net worth as of the present time is approximately $147,000, itemized as follows:

| | |
|---|---|
| Real estate at 5920 West North avenue, Milwaukee | $ 95,365.73 |
| Household furniture, etc. | 1,559.50 |
| Jewelry | 967.00 |
| Automobile | 600.00 |
| Proceeds from sale of 1,471 shares of stock of Bunde & Upmeyer Company | 38,981.50 |
| Life insurance—cash surrender value | 19,499.00 |
| Cash in bank | 1,035.10 |
| Cash in hands of Odgen & Co. | 178.64 |

|  | |
|---|---|
| Total | $158,186.47 |
| Less bank loan | –11,000.00 |
| Total net worth | $147,186.47 |

Mr. Bunde married a second time and was divorced from such second wife in 1953. His decline in net worth between 1941 to the present time is due largely to the property division in such second divorce action including the retention by the second wife of valuable real estate which he had placed in her name in 1945.

Up until September 24, 1954, Mr. Bunde served as president and director of Bunde & Upmeyer Company. During most of the period between his divorce from the plaintiff Charlotte F. Bunde down to his resignation on September 24, 1954, he received an annual salary from the corporation varying from $12,000 to $17,000 per year, and his net income during the thirteen-year period of 1941–1953 as disclosed by his income-tax return averaged $16,943.18 per year, which included returns from investments as well as his salary from Bunde & Upmeyer Company. In the fall of 1954, he contracted to sell and sold all of his 1,471 shares of stock in Bunde & Upmeyer Company to men who had been associated with him in the operation of the corporation, the sales price being $26.50 per share, the aggregate sales price being $38,981.50. Although no longer an officer or director after September 24, 1954, the corporation agreed to

pay him $500 per month until February 28, 1955, as salary for whatever services he might care to render to the corporation. In the meantime, in November, 1954, Mr. Bunde married for a third time, and now resides in retirement with such third wife in Mexico City, Mexico. His only income after February 28, 1955, will be that derived from his investments, the principal item of which is the business property he owns at 5920 West North avenue, in the city of Milwaukee. Inasmuch as Mrs. Bunde's net estate is greater than Mr. Bunde's, her potential income is greater than his.

One of the principal arguments advanced by counsel for Mrs. Bunde as to why Mr. Bunde should be required to continue to pay $275 per month alimony, as provided in the original divorce decree, is that Mrs. Bunde requires such amount in order to maintain the same standard of living to which she was accustomed when the parties were divorced in 1941. Mrs. Bunde testified that she estimated that she would require a minimum of $675 per month to live in the same style to which she was accustomed prior to the divorce; and that in order to have such income it would be necessary that Mr. Bunde continue to pay the $275 per month. However, she also testified that during the past eight years she resided in an apartment, the rent of which was $100 per month, but that she now intended to take $30,000 of her inheritance with which to purchase a home in which to reside.

It is apparent that, when Mrs. Bunde voluntarily stipulated in 1941 that the divorce judgment provide for only $275 per month alimony, she knew that such amount, together with her other income, would be insufficient for her to continue to live in the same style as that to which she had previously been accustomed. While the factor of enabling a wife to continue after a divorce to maintain the same standard of living as before is a proper element to be considered by the trial court in determining the original alimony provisions of the judgment of divorce, we do not believe that it

should be given weight in the instant case. It is obvious that Mrs. Bunde waived such factor in agreeing to the original stipulation, and in not asking for any increase in alimony during the years when her former husband was earning a substantial income. If she intends at this late date to resume the standard of living to which she was accustomed in 1941, her change in status, which occurred at the time of the death of her mother, by which she has come into possession of the corpus of the Ida Finkler trust and a further inheritance from her mother of approximately $126,000, enables her to do so.

The decline in net worth of Mr. Bunde from 1941 to the present time might well be ignored as an element requiring any reduction in alimony because the same was almost entirely due to his unfortunate second marital venture. However, the elimination of his income for personal services as an officer of the Bunde & Upmeyer Company as a result of selling his stock and retiring cannot be so ignored. An even more controlling factor to be considered is the increase which occurred in Mrs. Bunde's net worth from approximately $55,000 to $180,000–$190,000. In fact, if this latter were the only factor to be considered it might well warrant the elimination of any further payments of alimony by Mr. Bunde.

The factor which we consider would make it inequitable to relieve Mr. Bunde entirely of the payment of alimony is the interrelationship which exists between alimony and division of property. The value of the assets awarded to the wife as division of property of the parties usually has a material bearing on the amount of alimony which a trial judge will award to the wife in the divorce judgment. For example, where only a small amount of property is awarded in making the division of assets, a larger amount of alimony will be granted than in the case where the value of the property awarded to the wife is greater. In the instant case, Mrs. Bunde agreed to accept a very small portion of the total assets of her husband as her division of property. Because of

this, we conclude that it would be inequitable to entirely relieve Mr. Bunde from the payment of all alimony even though the result may be to require him to dip into his capital to pay the same.

After giving due consideration to all proper factors, we are constrained to conclude that $125 per month alimony is the maximum amount which Mr. Bunde hereafter should be required to pay to Mrs. Bunde. Inasmuch as he continued to draw a substantial salary from Bunde & Upmeyer Company until February 28, 1955, our mandate reducing the alimony from $200 to $125 per month will be made effective as of such date.

In further support of Mrs. Bunde's motion for review, her counsel contend that a new trial is required because of the improper exclusion of evidence by the trial court. The trial court sustained an objection to proposed testimony on the part of Mrs. Bunde that her adult daughter and the latter's minor child were now residing with her, and that she needed a larger income in order to defray the cost of the support she was providing such daughter and grandchild. The reason the daughter came to reside with Mrs. Bunde was because the daughter had become divorced from her husband.

We can perceive no prejudicial error in rejecting such offered testimony. In the case of *Brackob v. Brackob* (1953), 265 Wis. 513, 522, 61 N. W. (2d) 849, one of the grounds relied upon by the defendant husband, in applying for a reduction of support money and alimony, was that his sister had been divorced and he was contributing to the support of such divorced sister. We pointed out in our opinion in that case that such sister should have been looking to her former husband instead of her brother for support. Likewise, in the instant case, Mrs. Bunde's daughter should have been looking to her former husband rather than to her mother for the support of herself and child. The fact that Mrs. Bunde voluntarily supplied such support we deem to be immaterial

upon the issue of the amount of alimony Mr. Bunde should be required to pay to Mrs. Bunde.

The last point to be considered is Mr. Bunde's appeal from the order of December 16, 1954, amending the divorce judgment so as to make the alimony payments a lien upon his business real estate at 5920 West North avenue, in the city of Milwaukee. The evidence discloses that Mr. Bunde has removed from the state of Wisconsin to Mexico City with intent to reside in such city and has withdrawn all bank deposits and other funds from Wisconsin. Under these facts we do not consider it to be an abuse of discretion for the trial court to have granted Mrs. Bunde's application to make the alimony payments a lien upon Mr. Bunde's Milwaukee real estate. If at some future time such lien should interfere with a proposed sale or mortgaging of such real estate, Mr. Bunde can at that time apply to the court for appropriate relief.

*By the Court.*—The order of December 10, 1954, is modified so as to reduce the alimony payable by defendant to plaintiff from $200 to $125 per month, effective February 1, 1955, and, as so modified, said order is affirmed. The order of December 16, 1954, is affirmed. Neither party is to have costs on this appeal, and defendant shall pay the clerk's fees.