DEPARTMENT OF TAXATION, Appellant, v. SIEGMAN, Respondent.

*April 27—June 2, 1964.*

94

For the appellant the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the briefs were *George Thompson,* attorney general, and *Harold H. Persons,* assistant attorney general.

For the respondent there was a brief and oral argument by *Irving H. Nelson* of Milwaukee.

WILKIE, J.   The sole issue to be determined on this appeal is: *Does a transfer by a husband to a wife of full title in two appreciated parcels of real estate held in joint tenancy during the marriage, such transfer being made pursuant to a court-imposed divorce judgment making final division of the marriage estate under the terms of sec. 247.26, Stats., create income taxable to the husband pursuant to the provisions of sec. 71.03 (1) (g), Stats.?*

The department's rationale for the additional assessment of tax against Siegman is basically this:

Sec. 71.03 (1) (g), Stats., defines as a taxable receipt,

"All profits derived from the transaction of business or from the sale or other disposition of real estate or other capital assets; provided, that for the purpose of ascertaining the gain or loss resulting from the sale or other disposition of property, real or personal, acquired prior to January 1, 1911, the fair market value of such property as of January 1, 1911, shall be the basis for determining the amount of such gain or loss; . . ."

The department reasoned that the transfer of the property pursuant to the divorce decree was a disposition of an appreciated asset in discharge of Siegman's obligation to support

his wife at the economic and social status to which she had been accustomed, even though the marital relationship had been terminated. Conceding that the transfer was not made in lieu of alimony, the department reasoned that even if such transfer were properly labeled a final division of the marriage estate, pursuant to sec. 247.26, Stats., functionally such division was in satisfaction of Mrs. Siegman's unliquidated right to support.

Therefore the discharge of the obligation of continuing support was income produced by the disposition of an appreciated capital asset.

The department further reasoned that, given an arm's-length exchange of "property," where the market value of only one item can be readily ascertained, an equality of exchange value could be assumed, and so the department concluded that the value of the unliquidated right to support "received" by Siegman was equal to the market value of the property transferred to his wife, and the difference between this figure and his adjusted basis on the properties was taxable income to Siegman, pursuant to sec. 71.03 (1) (g), Stats.

We disagree.

What does the term "income" mean as it is used in sec. 71.03 (1), Stats.?

This court has held that " 'income' as used in the constitution is to be interpreted in accordance with its common, ordinary meaning as understood in everyday life. 'It must be gain or profit and it must be money or something equivalent thereto.' " [1]

In everyday usage, the phrase "taxable income" is not coextensive with the notion of economic gain or increment. To be deemed income, for the purpose of sec. 71.03 (1), Stats., an economic gain must be utilized by the taxpayer to

[1] *Falk v. Wisconsin Tax Comm.* (1930), 201 Wis. 292, 293, 230 N. W. 64.

satisfy some need before such increment is taxable. In short, the income in the sense of economic gain must be "realized," before it can be taxed.

But when is economic gain or income "realized" so that it may be considered "taxable"? Federal cases construing the Federal Revenue Code, which while not binding on this court are treated as persuasive guides as to the meaning of ch. 71, Stats., have evolved a concept of "realization" for tax purposes. In this respect, the first major federal case was *Eisner v. Macomber.*[2]

Holding a stock dividend issued on common stock not to be income within the meaning of the Sixteenth amendment, the United States supreme court there reasoned:

"Here we have the essential matter: *not* a gain *accruing to* capital, not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value *proceeding from* the property, *severed from* the capital however invested or employed, and *coming in,* being *'derived,'* that is, *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit and disposal;—*that* is income derived from property. Nothing else answers the description."[3]

In *Helvering v. Horst,*[4] the United States supreme court greatly modified the "fruit and tree" analysis of *Macomber.*

The owner of negotiable bonds had detached interest coupons shortly before their due date and had given the coupons to his son. The son collected the interest at maturity and reported the amount as his income. Both gift and actual payment of the interest occurred during the same taxable year of the donor, who was on a cash-receipts basis. The commissioner of internal revenue contended that the father was liable to tax on the interest and his contention was sustained by the United States supreme court, which reasoned:

[2] (1920), 252 U. S. 189, 40 Sup. Ct. 189, 64 L. Ed. 521.
[3] *Eisner v. Macomber, supra,* at page 207.
[4] (1940), 311 U. S. 112, 61 Sup. Ct. 144, 85 L. Ed. 75.

"Admittedly not all economic gain of the taxpayer is taxable income. From the beginning the revenue laws have been interpreted as defining 'realization' of income as the taxable event, rather than the acquisition of the right to receive it. . . . [p. 115.]

". . . The rule, founded on administrative convenience, is only one of postponement of the tax to the final event of enjoyment of the income, usually the receipt of it by the taxpayer, and not one of exemption from taxation where the enjoyment is consummated by some event other than the tax-payer's personal receipt of money or property. . . . [p. 116.]

". . . The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them. . . . [p. 117.]

". . . Such a use of his economic gain, the right to receive income, to procure a satisfaction which can be obtained only by the expenditure of money or property, would seem to be the enjoyment of the income whether the satisfaction is the purchase of goods at the corner grocery, the payment of his debt there, or such non-material satis-factions as may result from the payment of a campaign or community chest contribution, or a gift to his favorite son. . . . [p. 117.]

". . .

"The power to dispose of income is the equivalent of own-ership of it. The exercise of that power to procure the payment of income to another is the enjoyment, and hence the realization, of the income by him who exercises it. . . . [p. 118.]"

Therefore, the *Macomber* concept of "income," requiring value "derived from" and "severed from" property before recognition of income, gave way to the economist's view of income. The satisfaction of nonmaterial desires by the assignment of the right to accrued income was a realization of the benefits of that income for the assignor even though

such receipt was never *"received* or *drawn by* the recipient (the taxpayer) for his *separate* use . . ." [5]

Analytically then, any economic gain or increment is income, constitutionally and within the meaning of the Federal Code.[6] However, the receipt is not taxable until "realized," that is to say, utilized for some benefit, material or otherwise, by the taxpayer. As *Horst* suggests, the realization requirement is a matter of administrative convenience. The cost of conducting annual valuations of the appreciation on stock holdings, for example, would exceed the revenue recovered. The critical issue surrounding realization problems is not *whether* a receipt shall be taxed, but *when* it shall be taxed.

Subsequent federal cases have affirmed the *Horst* concept of realization in a variety of contexts.[7] In 1962, in the case of *Davis v. United States*,[8] the United States supreme court held that a transfer of appreciated property as a part of a property settlement upon divorce was a taxable event under the federal revenue code. The taxpayer had transferred stock to his former wife pursuant to a stipulated property settlement agreement incorporated in their divorce decree. As

---

[5] *Eisner v. Macomber, supra,* at page 207.

[6] *Commissioner v. Glenshaw Glass Co.* (1955), 348 U. S. 426, 75 Sup. Ct. 473, 99 L. Ed. 483.

[7] *Helvering v. Bruun* (1940), 309 U. S. 461, 60 Sup. Ct. 631, 84 L. Ed. 864. Value added to land as result of construction of building during term of the lease, held to be income realized by lessor on termination of the lease. *United States v. Hall* (10th Cir. 1962), 307 Fed. (2d) 238. Transfer of interest in cattle in satisfaction of nonenforceable gambling debt, held to create income taxable as capital gain to owner of cattle. *United States v. General Shoe Corp.* (6th Cir. 1960), 282 Fed. (2d) 9, transfer of appreciated property by corporate taxpayer to qualified retirement trust held to be taxable event even though taxpayer not obliged to make transfer. See also *International Freighting Corp. v. Commissioner* (2d Cir. 1943), 135 Fed. (2d) 310, distribution of appreciated property to employees as bonus deemed taxable event.

[8] (1962), 370 U. S. 65, 82A Sup. Ct. 1190, 8 L. Ed. (2d) 335.

consideration for the securities conveyed, his wife released her rights to alimony, dower, and intestate succession under Delaware law. The court held that the transfer was a taxable event under sec. 1001 of the Internal Revenue Code of 1954, which provides that appreciation in the value of property shall be taxed only upon its "sale or other disposition" (a provision similar to sec. 71.03 (1) (g), Stats.). The taxable income to Davis was the difference between the market value of the stock at the time of transfer, and the adjusted basis of such stock. Holding that the transfer was in discharge of his wife's inchoate marriage rights, and specifically, her right to continuing support, and further holding that it could be assumed that the value of these rights was equivalent to the fair market value of the stock transferred, the court concluded that the husband had realized income through the disposition of an appreciated asset. The decision affirmed the view of several circuit courts of appeal,[9] and rejected the view of another.[10] Subsequently, the same result was achieved in a case in which the property settlement was wholly decreed by the court, without stipulation by the parties as to the terms of such settlement.[11]

The department contends that the rationale and result of *Davis* and *Pulliam* ought to be applied in the instant case.

Sec. 71.03 (1) (g), Stats., provides that "[a]ll profits derived from the transaction of business or from the sale or *other disposition* of real estate or other capital assets;" are taxable as a capital gain. (Emphasis added.) The term "other disposition" does refer to noncommercial transactions. This phrase was added to sec. 71.03 (1) (g) by ch. 453, sec. 2, Laws of 1931. Prior to this legislative change, sec. 71.02 (2) (d), Stats. 1929, included within gross income,

---

[9] *Commissioner v. Halliwell* (2d Cir. 1942), 131 Fed. (2d) 642; *Commissioner v. Mesta* (3d Cir. 1941), 123 Fed. (2d) 986.

[10] *Commissioner v. Marshman* (6th Cir. 1960), 279 Fed. (2d) 27.

[11] *Pulliam v. Commissioner* (10th Cir. 1964), 329 Fed. (2d) 97.

"all profits derived from the transaction of business or from the sale of real estate or other capital assets." In *Miller v. Tax Comm.*[12] this court, in construing sec. 71.02 (2) (d), held that to give rise to taxable income "there must be a sale of capital assets at a profit. Generally but not necessarily the sale must be for money. The transaction should be one that constitutes a sale rather than a mere exchange of properties."[13] The addition of the term "other disposition" in ch. 453, sec. 2, Laws of 1931, was a legislative overruling of *Miller.* The transfer of an appreciated asset in return for qualitative, nonmaterial consideration, shall be deemed an "other disposition" within the meaning of sec. 71.03 (1) (g). Transfers similar to those present in *General Shoe, International Freighting* and *Hall, supra,* would be regarded as taxable events under ch. 71, Stats., even though such transfers are not sales, or strictly commercial transactions.

Clearly, the transfer of appreciated property pursuant to a property settlement incident to a divorce is a transfer for consideration. Upon termination of the marriage relationship, a husband continues to have an obligation to support his wife at the economic and social status to which she had become accustomed.[14] This obligation may be satisfied in several different forms. Pursuant to the provisions of sec. 247.26, Stats.,[15] the court may order direct alimony or main-

---

[12] (1928), 195 Wis. 219, 217 N. W. 568.

[13] *Miller v. Tax Comm., supra,* at page 221.

[14] *Miner v. Miner* (1960), 10 Wis. (2d) 438, 103 N. W. (2d) 4; *Caldwell v. Caldwell* (1958), 5 Wis. (2d) 146, 92 N. W. (2d) 356; *Bunde v. Bunde* (1955), 270 Wis. 226, 70 N. W. (2d) 624; *Borchers v. Borchers* (1949), 254 Wis. 302, 36 N. W. (2d) 79.

[15] "247.26 ALIMONY, PROPERTY DIVISION. Upon every judgment of divorce or legal separation for any cause excepting that of adultery committed by the wife, the court may, subject to s. 247.20, further adjudge to the wife such alimony out of the property or income of the husband, for her support and maintenance, and such allowance for the support, maintenance and education of the minor children committed to her care and custody as it deems just and reasonable. The court may also finally divide and distribute the estate, both real

tenance payments. However, the division of the marriage estate is also a means whereby the obligation to continue support is discharged. Although alimony payments and the division of the estate may be separated and may be seen as serving different functions,[16] and although division of the estate seeks to bring about an equitable division of property already accumulated, such division being influenced partly by the conduct of the parties during the marriage, and partly by an estimate of the wife's material and nonmaterial contribution during the marriage, without reference to future needs of the wife,[17] the division of the marriage estate is also a means of providing the wife with support in the generic sense, after termination of the marriage. An examination of some of the criteria for division set forth in sec. 247.26 establishes this proposition. The trial court is to consider the age of the parties, their health, and their ability to earn when making a division of the estate.[18]

Therefore, a court-decreed division of estate involving the transfer of appreciated property is a transfer in discharge of

and personal, of the husband, and so much of the estate of the wife as has been derived from the husband, between the parties and divest and transfer the title of any thereof accordingly, after having given due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties and all the circumstances of the case; but no such final division shall impair the power of the court in respect to revision of allowances for minor children under s. 247.25. A certified copy of such judgment which affects title to real estate shall be recorded in the office of the register of deeds of the county in which the lands so affected are situated."

[16] *Brackob v. Brackob* (1952), 262 Wis. 202, 54 N. W. (2d) 900.

[17] *Tonjes v. Tonjes,* post, p. 120, 128 N. W. (2d) 446; *Trowbridge v. Trowbridge* (1962), 16 Wis. (2d) 176, 114 N. W. (2d) 129; *Schneider v. Schneider* (1961), 15 Wis. (2d) 245, 112 N. W. (2d) 584; *Caldwell v. Caldwell, supra.*

[18] *Kronforst v. Kronforst* (1963), 21 Wis. (2d) 54, 123 N. W. (2d) 528; *Wagner v. Wagner* (1961), 14 Wis. (2d) 23, 109 N. W. (2d) 507.

the obligation to continue support, and is a transfer for consideration.

It does not follow, however, that every transfer for a noncommercial consideration is an "other disposition" within the meaning of sec. 71.03 (1) (g), Stats. While Siegman has received an economic benefit by means of the transfer of the appreciated parcels of real estate under the *Horst* analysis of income, the calculation of that benefit is a difficult matter. As we have already observed, not every receipt of income, in the sense of economic gain, is *immediately* taxable. Considerations of administrative convenience determine the *"when"* of taxation under the *Horst* analysis.

In *Davis* and *Pulliam,* the courts assumed that the value received by the husband was equivalent to the fair market value of the property transferred. Federal courts have held that, given a transfer of items when the market value of only one item can be determined, it may be assumed that the value of the other is equivalent to that of the determinable item, even though the transfer occurs in a noncommercial context.[19]

But this assumption is contrary to the facts surrounding the division of a marriage estate incidental to a divorce. It cannot be maintained that the value of the wife's unliquidated claim to support is equivalent to the fair market value of the transferred appreciated property. A division of the marriage estate often reflects a judgment as to the conduct of the parties during the marriage as well as being a means of providing support for the wife after termination of the marital relationship.[20]

---

[19] *United States v. General Shoe Corp.* and *International Freighting Corp. v. Commissioner, supra.*

[20] *Tonjes v. Tonjes, supra; Trowbridge v. Trowbridge, supra; Wagner v. Wagner, supra.* Sec. 247.26, Stats.: "The court may also finally divide and distribute the estate . . . after having given due regard to . . . the character . . . of the parties and all the circumstances of the case; . . ."

Therefore, a court may conclude that, even though the husband actually made the purchase from his own funds, and retained legal title, the wife should be awarded certain property, or an interest therein, as a payment for long-suffering acquiescence in abusive conduct on the part of the husband, without regard for the relationship of this property to her need for continuing support.[21] These factors in combination may well result in a transfer of property, the fair market value of which far exceeds the value of the wife's inchoate right to continuing support. The trial court has the power to provide for support *and* to divide the estate pursuant to sec. 247.26, Stats. Therefore, the right to continuing support and the result of the final division of the estate are not, under our law, coextensive categories and the basic assumption of *Davis* and *Pulliam* is inconsistent with the facts of many property settlements in this state.

In those cases where the court enters a final division of the estate based upon the stipulation of the parties, the possibility that the value of the property transferred far exceeds the value of the unliquidated right to support, is still present. A husband may well agree to transfer valuable property simply as a condition of release from the maelstrom of his marriage.

That property settlements surrounding divorce do not provide reliable guides to determine the economic benefit conferred by a release of the husband's obligation to support by means of a property transfer, was recognized in *Commissioner v. Marshman, supra.*

Marshman transferred full interest in certain stocks to his wife as an incident of a divorce property settlement. The commissioner concluded that Marshman had realized taxable income in an amount equal to the difference between the fair

---

[21] Sec. 247.26, Stats. *Wagner v. Wagner, supra:* the court may consider conduct which caused the divorce.

market value and the adjusted basis of the stock. The court of appeals rejected the claim reasoning:

"To say that the fair market value of the property received is the same as the fair market value of the property given up not only ignores realities, but is the use of a formula which is radically different from the well established and well recognized formula approved by the courts for determining fair market value. Under long established rulings fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. . . . A single transaction between a husband and wife made under the emotion, tension and practical necessities involved in a divorce proceeding does not comply with this rule. . . .

"The evidence shows that because of the inclusion in the proposed settlement of some 'emotional items,' it looked at one time as though the negotiations were going to blow up and that there were occasions when the negotiations appeared about to break down. Under such conditions, values are lost sight of, concessions are made, one does not expect or insist upon getting his money's worth for what he gives up. Unfortunately, it is often the case that what a husband transfers to his wife in a so-called property settlement in a pending divorce action is not given merely in exchange for a release of alimony and dower rights, but also includes, without being so labeled, such additional amount as the husband may be willing to pay in order to have the marriage status terminated. A property settlement in a divorce proceeding is usually influenced and often dictated by numerous intangible, personal and practical considerations which play no part in a transaction between a willing seller and a willing buyer in the open market. The value of what is given up is no criterion of the fair market value of the 'property' received." [22]

It is true that certain *voluntary* noncommercial transfers of appreciated property involving intangible, practical considerations will give rise to taxable income under sec. 71.03

---

[22] *Commissioner v. Marshman, supra,* at page 32.

(1) (g), Stats.[23] It is also true that certain commercially grounded involuntary transfers give rise to taxable income under sec. 71.03 (1) (g).[24] Yet, in these situations, the correlation between economic benefit received and the fair market value of the property transferred is easy to perceive. Transfers of property as an incident of a divorce settlement do not fit either category.

Because of the difficulty in assessing the economic benefit conferred upon the taxpayer in this context, we conclude that the legislature did not intend the transfer of appreciated property, as an incident of a property settlement, to be a taxable event within the meaning of sec. 71.03 (1) (g), Stats.

*By the Court.*—Judgment affirmed.

[23] *United States v. General Shoe Corp., International Freighting Corp. v. Commissioner, Helvering v. Horst, supra.* Psychological gratification arising out of giving the gift.

[24] Sec. 71.03 (1) (g) ". . . If property, exclusive of inventories (as raw materials, goods in process and finished goods), as a result of its destruction in whole or in part by fire or other casualty, theft or seizure, or an exercise of power of requisition or condemnation or the threat or imminence thereof, is involuntarily converted into money which is within one year in good faith, under regulations prescribed by the department of taxation, expended in the replacement of the property destroyed or in the acquisition of other property located in Wisconsin similar or related in service or use to the property so destroyed, or in the establishment of a replacement fund which, within 2 years from date of the fire or other casualty, is actually expended to replace the property destroyed or in the acquisition of other property located in Wisconsin similar or related in service or use to the property destroyed, no gain shall be recognized, and in the case of gain the property so replaced or newly acquired, for purposes of depreciation and all other purposes of taxation, shall be deemed to take place of the property so destroyed. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended. . . ."