FOSTER SHERWIN EDWARDS, APPELLANT, *v.*
VERA LOUISE EDWARDS, RESPONDENT.

No. 5092

November 2, 1966                                  419 P.2d 637

*Cooke & Roberts,* of Reno, for Appellant.

*John Sanchez,* of Reno, for Respondent.

# OPINION

By the Court, ZENOFF, D. J.:

Foster Edwards and Vera Edwards were divorced on September 30, 1963. The decree of divorce incorporated the terms and conditions of an agreement entered into by the parties on the same date. Insofar as is pertinent, the agreement provided that Foster pay Vera a sum of $150 per month for alimony and $175 per month for each of two of their children; in all the total sum of

$500 per month.[1] The court also retained jurisdiction to modify its decree relative to custody, support, and alimony payments upon application of either party.

On August 13, 1965, Foster moved to modify that portion of the decree relating to alimony and child support by eliminating the requirement to pay alimony and reducing the child support payments by a total of $50 per month. In all, he requested a total reduction of $200 per month. The motion was denied and he appeals.

This proceeding is authorized by NRS 125.170(1)[2] and is governed by NRS 125.140(2),[3] as noted in Folks v. Folks, 77 Nev. 45, 359 P.2d 92 (1961), and Grenz v. Grenz, 78 Nev. 394, 374 P.2d 891 (1962).

The sole issue is whether the lower court violated its discretionary power in denying Foster's motion to modify. Goodman v. Goodman, 68 Nev. 484, 236 P.2d 305 (1951).

At the time of the divorce Foster was an orchestra leader at the Sparks Nugget, a casino and entertainment enterprise in Sparks, Nevada. He was earning $27,380 net annually, based on a work year of 50 weeks. The change of cirumstances upon which he largely based the motion consisted of reduction of income, plus higher costs of maintaining his orchestra. In 1964, his net earnings were $19,800; in 1965, less than $17,000; and for 1966, he anticipated about the same income as in 1965. After 1963, the Nugget adopted an entertainment policy of importing some acts that provided their own music,

---

[1]There were provisions made by the parties for two other children born of the marriage but such provisions have no relevancy to this motion to modify.

[2]NRS 125.170(1). "In divorce actions, installment judgments for alimony and support of the wife shall not be subject to modification as to accrued installments. Installments not accrued at the time a motion for modification is filed shall not be modified unless the court expressly retained jurisdiction for such modification at the final hearing. The provisions of this subsection apply to all such installment judgments whether granted before or after July 1, 1961."

[3]NRS 125.140(2). "In actions for divorce the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same."

thus not requiring Edwards' orchestra to perform. In addition, the Nugget decided to close the show room several weeks each year. Thus, Foster's period of employment was 44 weeks in 1964, 38 weeks in 1965, and it was estimated that he would work about 40 weeks in 1966. Because Foster had to pay more money in order to keep certain key musicians the costs of keeping his orchestra increased. Further, because of the Medicare program, withholding taxes were higher.

Besides these factors, Foster remarried, a child was born of the marriage, thus incurring the additional costs of living for his new family. In the meantime, Vera was able to work as a cocktail waitress and did so from time to time, although she admitted that her interest to work was not keen since she was able to live comfortably on the alimony and child support payments.

The trial court, however, was unimpressed by Foster's evident lack of desire to cut his own family expenses. He owned one automobile at the time of the divorce, but bought two more after the divorce. He acknowledged that only one was necessary. The monthly payment obligations including insurance for the two additional automobiles totaled over $200 per month. This did not include maintenance and operating costs. The conclusion of the trial court then becomes apparent.[4] Since Foster asked for a reduction of $200 per month he could have obtained his own relief by disposing of the excess automobiles. We see no abuse of discretion.

Affirmed.

THOMPSON and COLLINS, JJ., concur.

---

[4] In his decision the trial judge stated, "I do not believe that the defendant cannot meet the original order, even with his reduced income, if he would really make a showing of his desire to cut his own family expenses."