UECKE, Respondent, v. DEPARTMENT OF TAXATION, Appellant.*

*October 5—October 31, 1967.*

* Motion for rehearing denied, without costs, on December 22, 1967.

For the appellant the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *Thomas J. Donnelly, Jr., Samuel J. Recht,* and *John A. Hazelwood,* attorneys, and *Brady, Tyrrell, Cotter & Cutler* of counsel, all of Milwaukee, and oral argument by *Mr. Recht.*

HANSEN, J.  The real issue is whether the terms of the option agreement effectively restricted the sale of the stock and hence the value thereof.

The position of the department is demonstrated by the following statements contained in a communication from the counsel for the department dated November 1, 1962:

"1. For Wisconsin income tax purposes there is no statutory distinction between 'restricted stock options' and other stock options to employes.  Accordingly, the Wisconsin income tax treatment of all stock options to employes must be governed by the same basic considerations, regardless of the fact that for federal income tax purposes 'restricted stock options' are specially treated under Section 421 of the Internal Revenue Code. . . .

"4. Ordinarily a compensation payment comes into existence at the time an option given to an employe is *exercised or sold.* . . . If the option is exercised by the employe, he receives compensation equal to the difference between the market value of the stock and the price paid therefor on the date he receives the stock."

Our attention has not been directed to any statute, case, ruling or other published policy in Wisconsin concerning Wisconsin income taxation of employee stock options prior to 1962.

Effective for the year 1963, Wisconsin adopted provisions substantially identical to the restricted stock option provisions of the Federal Internal Revenue Code.  The provisions are found in sec. 71.032, Stats. 1963.  The Fed-

eral Revenue Act of 1964 amended the provisions relating to restricted stock options and in 1965 Wisconsin law was again amended to substantially follow the federal act. Included in the 1965 amendment was the repeal of sec. 71.032 which was adopted in 1963.

The Wisconsin statute applicable to the matter presently before us is sec. 71.03, Stats. 1959, which provides in part:

"**Gross income; inclusions, exclusions. (1)** INCLUSIONS. The term 'gross income,' as used in this chapter, shall include:

"(a) All wages, salaries or fees derived from services, . . .

"(l) And all other gains, profits or income of any kind derived from any source whatever except such as hereinafter exempted."

This court, on several occasions, has directed its attention to the meaning of the term "income" as used in Wisconsin income tax laws.

In *Lawrence v. Tax Commission* (1933), 213 Wis. 273, 276, 251 N. W. 242, this court indicated:

"Of course the idea of the income tax law is to tax income, and income is cash or its equivalent. It must be money or that which is convertible into money."

Also, more recently in *Department of Taxation v. Siegman* (1964), 24 Wis. 2d 92, 96, 128 N. W. 2d 658, the meaning of the term "income" was again considered.

"What does the term 'income' mean as it is used in sec. 71.03 (1), Stats.?

"This court has held that 'income' as used in the constitution is to be interpreted in accordance with its common, ordinary meaning as understood in everyday life. 'It must be gain or profit and it must be money or something equivalent thereto.'

"In everyday usage, the phrase 'taxable income' is not coextensive with the notion of economic gain or increment. To be deemed income, for the purpose of sec.

71.03 (1), Stats., an economic gain must be utilized by the taxpayer to satisfy some need before such increment is taxable. In short the income in the sense of economic gain must be 'realized' before it can be taxed."

In *Siegman, supra,* the court then discussed "realization" and alluded to several federal cases, including *Helvering v. Horst* (1940), 311 U. S. 112, 61 Sup. Ct. 144, 85 L. Ed. 75, and at page 99 stated:

"Analytically then, any economic gain or increment is income, constitutionally and within the meaning of the Federal Code. However, the receipt is not taxable until 'realized,' that is to say, utilized for some benefit, material or otherwise by the taxpayer. As *Horst* suggests, the realization requirement is a matter of administrative convenience. The cost of conducting annual valuations of the appreciation on stock holdings, for example, would exceed the revenue recovered. The critical issue surrounding realization problems is not *whether* a receipt shall be taxed, but *when* it shall be taxed."

The pivotal question in the matter before us is whether the restriction placed upon the transferability of the stock in 1959 and 1960 was sufficiently effective to inhibit realization of a gain so as to render the actual value of the stock indeterminable at the time the options were exercised.

We conclude that the restrictions placed upon the transferability of the stock were sufficiently effective so as to inhibit the realization of any gain at the time the options were exercised and in doing so consider the following factors to be controlling in the case presently before us:

(a) The purpose of the executive option plan was to grant a proprietary interest in the corporation.

(b) The requirement of a written representation that employee intended to hold the stock for investment purposes, rather than for distribution.

(c) The employees' representation of "investment intent" brought the stock option plan within the provisions in the Securities Act of 1933 which exempt from the

registration requirements "transactions by an issuer not involving any public offering." (15 USCA sec. 77d (1)). Sale of the unregistered Outboard stock without qualifying under this exemption would have exposed both the company and the employee to both civil and criminal sanctions under the Securities Act.

(d) The general knowledge of the employees, as evidenced by testimony, recognizing the fact that they were not free to sell the stock as long as they worked for Outboard and that if they did sell such stock they "might as well look for another job."

(e) An individual notice to each employee, before he became eligible to exercise his respective option, which served as a reminder of the purpose of the option plan.

(f) A managerial attitude, as evidenced by the testimony of Mr. Robert Wallace, secretary of Outboard, which revealed that dismissal would be the most practical form of discipline for violation of the option scheme.

(g) The fact that from the inception of the plan there was only one instance in which an employee sold a portion of the option stock in violation of the restriction in the agreement. This involved 100 shares of stock. The employee was severely reprimanded but no further action was taken because Outboard was satisfied that the employee had misunderstood the investment restriction.

(h) The fact that the effective restriction was eventually modified by the 1960 amendment and compliance had with the regulations of the Securities and Exchange Commission.

The impracticability of endeavoring to measure, for income tax purposes, an employee's economic benefit in exercising stock purchase options is readily apparent in reviewing the history of *MacDonald v. Commissioner of Internal Revenue* (7th Cir. 1956), 230 Fed. 2d 534. In *MacDonald,* the taxpayer acquired stock in his employer's corporation pursuant to an option, and orally agreed not to sell the stock during the term of his employment. At

the time the treasury regulations did not provide, as they now do, that a restriction on sale postpones the realization of income until the restrictions lapse. The commissioner argued that because the taxpayer could quit his job and sell the stock, there was no legal restriction on transfer and therefore the income should be realized in the year of the exercise of the option. The court of appeals indicated that that reasoning "borders on the absurd." The court remanded the case to the tax court to determine the effect of the potential job loss on the stock's value. Obviously the tax court could not measure the value of the taxpayer's job in connection with his stock and so held, *MacDonald* (1956), 16 T. C. M. 208. However, the court of appeals again reversed and remanded in 1957. *Commissioner of Internal Revenue v. MacDonald* (7th Cir. 1957), 248 Fed. 2d 552.

Subsequent to *MacDonald, supra,* Treas. Reg. sec. 1.421–6 (d) (2) (i) was enacted, which provides:

"If the option is exercised by the person to whom it was granted but, at the time an unconditional right to receive the property subject to the option is acquired by such person, such property is subject to a restriction which has a significant effect on its value, the employee realizes compensation at the time such restriction lapses or at the time the property is sold or exchanged, in an arm's length transaction, whichever occurs earlier . . . ."

The final contention of the department is that should the court determine there were effective restrictions, and we have so determined, that the 1960 amendment removed the restrictions as to 40 percent of the shares of stock involved. The record discloses that the department has never made an assessment against the taxpayer on this basis and, therefore, this contention is not properly before this court on appeal. *Callaway v. Evanson* (1956), 272 Wis. 251, 75 N. W. 2d 456; *Sohns v. Jensen* (1960), 11 Wis. 2d 449, 105 N. W. 2d 818.

*By the Court.*—Order and judgment affirmed.

The following memorandum was filed December 22, 1967.

PER CURIAM (*on motion for rehearing*). In its brief in support of its motion for rehearing, the state contends the mandate is inconsistent with the opinion filed. However, the state is in error in assuming that the affirmance of the order of the trial court remanding the matter to the Wisconsin tax appeals commission requires the commission to determine the value of the stock. It was our intention that upon remand the commission would enter findings, conclusions and an order consistent with our opinion that no assessment was proper at the time the options were exercised.

Motion denied without costs.