**Darla Dolores JOHNSON, Appellant (Plaintiff),**

v.

**Paul K. JOHNSON, Appellee (Defendant).**

No. 85–222.

Supreme Court of Wyoming.

April 10, 1986.

David E. Westling, Casper, for appellant.

Hugh M. Duncan, Casper, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This case originates from a 1980 separation agreement and divorce decree which returned to the trial court on a payment show-cause motion by the ex-wife and a motion to modify by the ex-husband in order to eliminate agreed alimony installment payments. The appeal by the ex-wife is taken from the adverse decision which affected alimony termination.

We affirm in part and reverse in part by remand.

The issues stated by the appellant, Darla Johnson, are:

"I. Was sufficient evidence presented to justify a modification of the existent decree in regards to alimony?

"II. Did the trial court abuse its discretion by terminating alimony rather than reducing to reflect a change of circumstances?

"III. Should the support payments be considered to be a property settlement and therefore not subject to modification?"

Appellee, Paul Johnson, differently states the issues:

"I. The trial court correctly determined that the obligation contained in the decree was one of alimony, rather than a disposition of property.

"II. Modification of alimony is addressed to the sound discretion of the trial court; there has been no showing of a clear abuse of discretion."

This court will address the appeal by these issues:

(1) Was the trial court correct in its analysis of the agreement as involving alimony and not a property-settlement arrangement?

(2) Having determined that the issue is alimony, is a required change of circumstance of either party proven?

(3) Is any other basis of alimony termination demonstrated?

Darla Johnson and Paul Johnson, M.D., were married in 1962, and a child, Paul Kassis, was born in 1964. Franklin Todd Chilcote, a child of a prior marriage, born to Darla in 1959, was adopted by Paul Johnson after their marriage. After moving to Casper, Wyoming, where Dr. Johnson practices medicine, the parties came to divorce by complaint, separation, property settlement and alimony agreement, and resulting decree in March, 1980.

Their disaffinities now reappear in a motion to show cause filed by Darla Johnson on April 15, 1985, supported by affidavit contending for delinquency in agreed alimony payments, and with a petition for restraining order to deter nonpayment by court order and decree. Paul Johnson responded by motion for an order to show cause filed in May, 1985, alleging both present overpayment and a change in circumstance justifying alimony termination.

An initial hearing was held on May 22, 1985, before Judge Dan Spangler, who, by order filed June 18, defined "personal net income" as involved in the computation of alimony pursuant to both the separation agreement and divorce decree. The proceeding then continued for later trial before Judge Harry E. Leimback, on the motion of Darla Johnson for contempt citation, and the motion of Paul Johnson to modify.[1]

In the order of August 30, 1985, from which the present appeal is taken, the trial court determined, by application of the computative method utilized in the order of June 18, that no deficiency in payment under the terms of the separation agreement existed, and that an overpayment of $6,658.94 had been made by Paul Johnson. Secondly, the court determined that a material and substantial change in the circumstances of the parties existed since entry of the divorce decree in 1980; that Paul Johnson's alimony, child support and child education obligations should be terminated; and that the alimony overpayment should be forgiven.

As a consequence of the completely adverse decision of the trial court, Darla Johnson advances this appeal from the

1. Order filed June 18, 1985:
"(3) The 'personal net income' to which reference is made is the gross monthly income received by plaintiff as compensation for employment or for services rendered, less only federal income taxes which were deductible therefrom after claiming herself as an exemption, less Arizona state income taxes if such are withheld, and less withholding for social security. In computing plaintiff's 'personal net income', no deductions were, or are, to be allowed for business or farm losses, or any deductions other than federal income taxes which were deductible therefrom after claim-

ing herself as an exemption, less Arizona state income taxes if such are withheld, and less withholding for social security."

The statistical facts of the litigation are self-evident as a dilemma in appellant's approach. If the computation method is now challenged, a differing factor for change-of-circumstance consideration would result. If income increase does not trigger alimony adjustment, then a change of circumstance is clearly evident. *Steinau v. Steinau*, Fla.App., 343 So.2d 631 (1977); *Brady v. Brady*, 94 Cal.App.2d 1, 210 P.2d 69 (1949).

modification order and decree of August 30, 1985.

Our consideration involves the terminology of the separation agreement as it may be affected by subsequent events.

The agreement provided:

"2. Husband shall pay to Wife, as and for alimony, the sum of Three thousand four hundred dollars ($3,400.00) per month * * * for a total of twenty-two (22) years. Such obligation shall cease if the Wife dies or remarries.

"PROVIDED, however, if the Wife obtains personal net income exceeding Five hundred dollars ($500.00) per month, the above alimony payment shall be adjusted, on a monthly basis, and a figure equal to one-half (½) of her monthly income shall be deducted from the alimony payment to be made by the Husband on the next succeeding month.

"3. If the Wife should die prior to December 1, 1990, Husband shall pay to Paul Kassis Johnson the sum of One thousand six hundred dollars ($1,600.00) per month, and Husband shall pay to Franklin Todd Johnson, the sum of One thousand six hundred dollars ($1,600.00) per month. * * *

\* \* \* \* \* \*

"6. Neither party has or makes any claim to property of the other, owned at the time of marriage, or inherited or otherwise acquired from their respective families.

\* \* \* \* \* \*

"14. This Agreement shall not be amended or supplemented except by written instrument signed by all parties hereto."

All provisions are then identically stated in the resulting divorce decree, except for paragraph 14, which was not included.[2]

I

## Alimony or Child Support

■ It is determined law of Wyoming by statute and case law that alimony provisions, even if originally created by agreement, are subject to modification for change of circumstances, but property settlement provisions cannot be similarly modified. *Bjugan v. Bjugan*, Wyo., 710 P.2d 213 (1985); *McMillan v. McMillan*, Wyo.,

---

**2.** Ambivalence in the Wyoming cases exists as to the relation between a pre-divorce agreement, the resulting decree, and later modification efforts as usually raising the definitional issues of alimony versus property settlement. A footnote comment was included in *Booker v. Booker*, Wyo., 626 P.2d 561, 563 n. 1 (1981):

"An agreement between the parties presents an additional factor to be considered upon request for modification of a divorce decree.

"'Property settlement agreements entered into by the parties prior to a divorce action are generally recognized and given force and effect in the decree. It has been held, however, that such an agreement is an independent contract even though recognized in the decree. *Ulrich v. Ulrich*, 366 P.2d 999, 1002 (Wyo.1961).' *Prentice v. Prentice*, Wyo., 568 P.2d 883, 886 (1977)."

A disturbing symptom of result orientation may be discerned in review of court approaches to questions of definition in the original agreement as to whether it merges in the decree, whether it can be modified, or whether it constitutes stare decisis and res judicata. *Murphy v. Murphy*, 138 Colo. 516, 335 P.2d 280 (1959); Annot., 32 A.L.R.2d 1145 and later case service, Divorce decree as res judicata in independent

action involving property settlement agreement; Annot., 61 A.L.R.3d 520, Power of the court to modify decree for alimony or support of spouse which was based on agreement of parties. See also, *Harry M.P. v. Nina M.P.*, Del., 437 A.2d 158 (1981) (agreement freely made is enforceable), and *Vorhof v. Vorhof*, Mo.App., 532 S.W.2d 830 (1975) (decretal alimony is subject to modification while contractual support is not), as two examples of a hard-line approach in consideration of the agreement.

Further consideration in this case of the differentiated status of the pre-divorce agreement by virtue of the decision which we make would be, at best, dicta, but great care by a divorce attorney is strongly indicated because of the proclivity of the law to characterize and consequently differentiate so that what once was ceremonially agreed may later be discretionarily attacked. Cf. *Mentock v. Mentock*, Wyo., 638 P.2d 156 (1981) (separation agreement—child support), with *Paul v. Paul*, Wyo., 631 P.2d 1060 (1981) (property settlement). Philosophically, a difference to some extent might be persuasive for alternative approaches to attempted modification as derived from agreement or as imposed by the court after a hostile-conflict adjudication.

702 P.2d 1279 (1985); *Hendrickson v. Hendrickson*, Wyo., 583 P.2d 1265 (1978); *Salmeri v. Salmeri*, Wyo., 554 P.2d 1244 (1976); *Lonabaugh v. Lonabaugh*, 46 Wyo. 23, 22 P.2d 199 (1933).

We concur with the decision of the trial court that as to Darla Johnson the $3,400 monthly payments were alimony. This conclusion is based on terminology of the separation agreement in conjunction with the observation that essentially all of the community property acquired by the parties went to Darla Johnson by the agreement, and any present money payments in addition, as further property settlement arrangements, would not make sense. Additionally, that is what the parties designated the payment to be.. This court is directed to seek enforcement of the intent of the parties in written agreements of the parties unless otherwise excusable by different legal principles. *Chorney v. Chorney*, Wyo., 383 P.2d 859 (1963). See *Hurd v. Nelson*, Wyo., 714 P.2d 767 (1986). Cf. *McMillan v. McMillan*, supra. Determinative in this case is the phrase in the agreement "such obligation shall cease if the Wife dies or remarries." *Neagle v. Neagle*, Wyo., 481 P.2d 661 (1971). The parties designated the payments by agreement to be alimony and the provisions made were compatible with the description utilized.

## II

### Payment to the Children

■ We cannot concur that the provisions of paragraph 3 are for child support as determined by the trial court. In 1980, Franklin Todd Johnson was 21, and Paul Kassis Johnson was 16. By 1985, Franklin was likely out of school, at age 26, and Paul was 21. Contingent upon the death of the mother, the children's payment right would continue until 1990, when Franklin would be 31, and Paul 26. Whatever these payments may be, they are not child support of the conventional kind.

Since in 1985 both sons were of age, we are concerned about jurisdictional problems since neither beneficiary of this paragraph of the agreement was represented at the court proceedings wherein agreement modification was requested. Additionally, the motion for order presented in behalf of the father did not in itself request the relief consequently granted by order of the court. There is time enough to resolve any question about the payment obligations under paragraph 3 if Darla Johnson dies before December 1, 1990 and the father and sons contest the issue at that time. No jurisdiction existed for entry of that portion of the order in the absence of the requested relief by pleading and some arrangements so that the adversely affected parties would then be within the jurisdiction of the court with a right to defend. *Nation v. Nation*, 715 P.2d 198 (1986.)

## III

### Alimony Computation

■ We do not now determine whether the first order entered June 18, 1985, was an appealable order to be waived when no appeal was later taken from that order, since the substance of the order was adopted by the second order and decision from which the present appeal results. The computation of income was not stated as an issue of appeal by appellant's brief or in oral argument. Consequently, the decision and order of June 18, 1985, then readopted in the further order of August 30, 1985, will be considered as the law of this case as to the method for income computation under the separation agreement and original decree. 5 Am.Jur.2d Appeal and Error § 744. *Zanetti v. Zanetti*, Wyo., 689 P.2d 1116 (1984); *Knadler v. Adams*, Wyo., 661 P.2d 1052 (1983). Additionally, reason and a factual basis exist for the decision made. *Wangler v. Federer*, 714 P.2d 1209 (1986).

## IV

### Substantial Change in Circumstance

■ Appellant Darla Johnson strongly contends that the determination of the trial court of a substantial change in circumstance required for modification constitutes

an abuse of the discretion of the trial court premised on the evidence afforded at the trial. Involved by evidence, and noted in the court's conclusion, were the circumstances of Darla Johnson involving salary income and benefits achieved by substantial inheritance which she was to receive shortly after the hearing date. This court has now approved the flexible-income alimony adjustment determination as applicable. This brings the substance of the question for consideration to whether change in circumstance exists if the alimony agreement itself contemplated income possibilities and a formula to result in adjustment.

Otherwise stated, if the agreement contemplates income change, then is there a required change of circumstance when the separation agreement provision is activated? Logically we cannot deny the obligation of the parties to conform to their agreement as then approved by court decree, when the agreement in itself contemplated a change of circumstances and activated a formula adjustment upon that occurrence. Paul Johnson is entitled to reduction in accord with his agreement, both for salary income earned by Darla Johnson and the reasonable return which she will receive as income from the bequest funds and stock inheritance. Income is defined to include investment return on inheritance, and to that extent the original order of June 18, 1985, is supplemented by this decision.

We do not find a change of circumstance has occurred as to Darla Johnson sufficient to vitiate the agreement, since the agreement contemplated

"* * * adjustment on a monthly basis, and a figure equal to one-half (½) of her monthly income shall be deducted from the alimony payment to be made by the Husband on the next succeeding month."

This decision is specifically differentiated from the conclusions of this court in *Mentock v. Mentock,* supra. In that case, the rule of the trial court which was rejected on appeal was that

"* * * there must be an unanticipated substantial change in circumstances or a discovery of material facts unknown to the Court and unanticipated by the parties * * *." 638 P.2d at 159.

The principle here involved is that planned and anticipated changes wherein a formula adjustment results are not a change in circumstance, since not only was the change anticipated but the adjustment was agreed. *Hellweg v. Hellweg,* 30 Or. App. 995, 568 P.2d 710 (1977); *Matter of Marriage of Pratt,* 29 Or. 115, 562 P.2d 984 (1977). Cf. *Curtis v. Curtis,* 218 Kan. 130, 542 P.2d 330 (1975).

■ Determining that the required technical "change of circumstance" does not exist as involving income available to Darla Johnson, we will now turn to consider the evidentiary status of the required change of circumstance involving Paul Johnson which would otherwise also justify present modification.

We are reminded that the definitive rule was stated, or perhaps overstated, in *Rubeling v. Rubeling,* Wyo., 406 P.2d 283, 284 (1965):

"The conclusion reached in that case was substantially this: As long as the circumstances and conditions continue unchanged, there is no lawful power or authority in our court, or any other court, to supplant the prior judgment of the trial court by any type of modification. The absolute necessity for principles of res judicata is so strong that we cannot depart from the holding in the Laughton case.

"Therefore, taking the basic question involved in this appeal, as stated in appellant's brief, we are compelled to answer that proof of change of circumstances is required in a support-modification proceeding, even though it is proved that the support requirements are, for practical purposes, impossible of attainment by the father."

It is not intended to readopt the harshness of the language by repetition here. Rubeling followed *Laughton v. Laughton,* 71 Wyo. 506, 259 P.2d 1093, 43 A.L.R.2d 351 (1953), as the law on modification in

this state for both alimony and child support pursuant to § 20–2–116, W.S.1977. Obviously, in considering income as a change if tax write-off factors are excluded as to a computation for Darla Johnson, then it would not seem appropriate to use a differentiated taxable income for analysis as to the status of Paul Johnson. The review of the tax returns which were put in evidence reveals income for him for medical practice in 1980 of $93,275, and in 1984 of $146,159. Tax write-offs from J & M Leasing, which apparently is the airplane operation, would hardly seem to demonstrate an adverse change of circumstances. Likewise, interest, costs, and home mortgage of $170,000, with monthly payments of $2,150, newly acquired, cannot serve to ascribe the required ex-husband change of circumstance. *Nuspl v. Nuspl,* 717 P.2d 341 (1986).

This court and other jurisdictions have failed to accept remarriage or subsequently acquired indebtedness as modification factors required to demonstrate change of circumstance.[3]

Accepted Wyoming law does not accommodate the purchase of a house for over $200,000 with a large mortgage or the acquisition of an airplane for tax loss write-off purposes as a required change of circumstance as denominated in our prior cases.

Although not separately dispositive, there must be significance attached to the separation agreement when modification is considered as contrasted with a court-imposed payment responsibility which was not voluntarily assumed by the prior marital partner.

The factual basis at this time to sustain a change of circumstance sufficient to terminate alimony is not demonstrated, and consequently the order as entered constitutes an abuse of discretion. A continued decrease in income by Dr. Johnson or other future developments that may result from the present economic conditions in Casper may justify further consideration by the trial court. *Packard v. Packard,* 30 Or. App. 55, 566 P.2d 203 (1977).

V

Other Basis for Alimony
Termination Demonstrated

The primary vice of the alimony phenomenon is the economic inadvisability of remarriage by the wife and the frequent remarriage by the husband. A challenge to draftsmanship in pre-divorce agreements is never more strongly needed.

The evidence in this case would suggest the classic result of an alimony agreement which results in the wife's disinclination to remarry for economic reasons while seeking natural companionship: POSSLQ (persons of the opposite sex sharing living quarters).

The query, either philosophic or legal, is occasioned as to whether the alimony termination can be justified as a change of circumstance when the wife accommodates a personal relationship without marriage following divorce where alimony may have been provided. We will not embark upon a journey between Skylla and Charybdis in this case for two reasons: trial evidence demonstrated that the relationship previously existent for Mrs. Johnson had ended by the date of the trial; and secondly, the

**3.** A comparison of 1980 and 1984 tax returns reveals that in 1980, Paul Johnson had medical income of $93,275, capital gains of $26,887, and a Schedule E, J & M Leasing loss of $8,711. In 1984, he had medical income of $146,159, capital loss of $3,000, and Schedule E depreciation on the condominium of $12,951, a J & M Leasing loss of $32,606 for an airplane, and condominium tax write total of $45,557. Actual earned income in 1980 was $93,275; in 1984 $146,159; or a difference of $52,884, a 56.6% increase in ordinary income in the four years.

This is hardly a change of circumstance upon which a modification of a pre-decree separation agreement, property settlement agreement, and consequent decree providing for alimony could be premised. *Hamann v. Hamann,* 20 Ariz.App. 234, 511 P.2d 678 (1973); *Kinnaman v. Kinnaman,* Colo.App., 532 P.2d 755 (1975); *Edwards v. Edwards,* 82 Nev. 392, 419 P.2d 637 (1966); *Sayland v. Sayland,* 267 N.C. 378, 148 S.E.2d 218 (1966); *Bunde v. Bunde,* 270 Wis. 226, 70 N.W.2d 624 (1955).

agreement of the parties specified remarriage and did not include nonmarriage cohabitation as a termination basis. In this case we are not inclined to create a new rule as a substitute for draftsmanship and negotiation of the original divorce decree.

We affirm the decision of the trial court that the payments are alimony and are consequently subject to modification with a proof of change of circumstance, but do not find that change of circumstance demonstrated at this time.

The case is remanded for entry of an order in accord herewith and the establishment by agreement or decree of an arrangement to carry out the purposes of the separation agreement provision for income offset against alimony obligation.

Affirmed in part, reversed in part, and remanded.