## ANDERSON VS. ROUNTREE.

1. PLEADING. — After a *special* demurrer has been sustained to a plea in abatement, it is not error to allow the defendant to plead over.
2. SAME. — After leave is given to the defendant to plead over, it is not error to allow him to plead in proper form, the same matter in abatement embraced in the plea which had been held bad, on special demurrer, for informality.
3. PRIVILEGE FROM ARREST. — The privilege from arrest secured to members of the legislative assembly, not only exempts their persons from *actual* arrest, but also exempts them from suit or any civil process, which may interfere with their public duties, during the continuance of their privilege. It is the privilege of the people as well as of the individual members, and of the house.

ERROR to the District Court for *Dane* County.

This was an action of *assumpsit*, commenced by summons, and brought by *Anderson* against *Rountree*, in the Dane county district court. *Rountree* was a member of the legislative council, and process was served upon him on the next day after the adjournment of the legislative assembly. At the return term the defendant pleaded his privilege in abatement of the suit, to which plea the plaintiff demurred specially, and, the demurrer being sustained on the ground of the informality of the plea, leave was given to the defendant to plead over. The defendant then pleaded, formally, his privilege in abatement, by way of an amended plea, which plea the plaintiff moved the court to reject as a nullity; but the court overruled the motion. The plaintiff then filed a general demurrer to the amended plea, which demurrer the court overruled, and gave judgment for the defendant. To reverse this judgment, the plaintiff prosecuted a writ of error.

*David Brigham,* for plaintiff in error.

1. The plea of privilege could not avail the defendant, as the process was a *summons;* the word *"arrest"* has a technical meaning, and could be used in no other sense, and referred to the Statutes of Wisconsin, 35, 157. If a privileged person should be arrested he would be discharged, but the suit would continue. Bacon's Abr., title Privilege ; Const. U. S. art. I, § 6 ; 3 Chitty's Gen. Prac. 357, 358, 359 ; Tidd's Prac. 219–221 ; 1 Johns. Cases, 415 ; *Doty v. Strong, ante.*

2. That whether the matter pleaded be sufficient or not, it was not pleaded at the proper time or in due form ; that the defendant could not file a second or amended plea in abatement after judgment of *respondeat ouster.* On this point he referred to 1 Chitty's Plead. 457 ; Bacon's Abr., title Abatement, letter O ; 1 Tidd's Prac. 563, 565, 640, 641, 638 ; 6 East, 583 ; 1 Vesey, 202, 203 ; 6 Maule & Selw. 88 ; 5 Mass. 362 ; Stat. of Wis. 257, §§ 1 and 38 ; Gould's Plead., ch. 5, §§ 3, 12 ; ch. 9, § 12, and cases there cited.

*John Catlin,* for defendant, insisted that there was but one point in the case that required the consideration of the court, and that was the question of privilege under the third error assigned ?　The other points in the assignment of errors are not well taken, and are not sustained by the record.　The statute of amendments clearly gives the court the power to amend the plea and affidavit (Wis. Stat. 257), and the second plea ought not to be treated as a nullity, because it was only an amendment of the first plea.

The privilege of members of the legislative assembly must be construed to exempt them from the service of a *summons,* as well as from an *arrest* under a *capias.* The technical construction of the word *"arrest,"* which has been contended for, does not apply to the word as used in the statute, giving the privilege.　The meaning of the statute was not only to exempt members of the legislature from actual arrest under a capias, but to exempt

Anderson vs. Rountree.

them during their privilege from suit, or the service of any civil process that would in any way interfere with the discharge of their public duties. *Geyer's Lessee v. Irvin*, 4 Dallas, 107 ; *King v. Coit*, 4 Day's Cases, 129 ; 2 Yeates, 222 ; 1 Dallas, 325 ; 9 Johns. 216, and the case of *Doty v. Strong, ante.*

MILLER, J. The defendant was a member of the legislative council of the Territory, from Grant county, and was in Madison attending the same as such member. The council adjourned on the 19th day of February, 1841, and on the next day a summons was served on said defendant at Madison, in said county of Dane, before he left for his home. Said writ was returnable to the next term of the district court for said county, to be holden on the second Monday of May in said year. At the return of the writ, the defendant filed a plea, claiming to be discharged from said suit, on the ground of his privilege as such member, to which the plaintiff filed a demurrer, which was agreed by the parties to be considered a special demurrer, which the court entertained, and believing the plea filed to be informal, the court made this entry : *"that the demurrer be sustained and the defendant have leave to plead over."* The defendant then filed another plea, averring his said privilege, which the plaintiff moved the court to strike off as a nullity ; and the court overruling said motion, the plaintiff filed a general demurrer to said plea, and issue being joined on the same, the court sustained the said plea, and dismissed the defendant from the suit. The questions raised upon the record for disposition by this court are :

1. Did the court err in permitting the second plea to be filed, or in not sustaining the motion to strike it off as a nullity ?

2. Did the court err in sustaining the defendant's plea of privilege ?

If the defendant had pursued the usual practice of the present day, in filing a motion to be discharged from the

suit, with his reasons therefor, under oath, the difficulties of the first point would not have occurred, and counsel would have saved themselves and the court some trouble. But we do not see that there was error in the court allowing the second plea to be filed for the furtherance of justice, when the first one was voidable for informality. The second one was the only one on which an issue could be joined, or the rights of the parties could be tried. Nor was there any delay or injury to either party by the proceeding. There was no formal judgment against the defendant on the first plea. The court will not reverse the judgment on this point.

The second point is the important question in the cause.

Privilege is an exemption from some burden or attendance, with which certain persons are indulged, from a supposition of law, that the stations they fill, or the offices they are engaged in, are such as require all their time and care, and that, therefore, without this indulgence, it would. be impracticable to execute such offices to that advantage which the public good requires. 5 Bacon's Abr., title "Privilege." Privileges are said to be very ancient, and are, doubtless, of common-law origin. The privilege from arrest of an attorney, a witness, or a suitor in court, is a privilege of the court for the due administration of justice, and is to be determined by the court. The privilege from arrest of members of legislative bodies during the session, and for a reasonable time to go to and return from the same, is a privilege of the people, as well as of the representative, and of the body of which he is a member, and is properly to be judged and determined by the house to which the member belongs, unless in cases of suits in courts against members, when it becomes a proper and necessary subject for the consideration of the courts.

In 5 Bacon's Abr. 618, title *Privilege*, it is stated that this privilege extends to arrests on judicial as well as on *mesne* process, and to the service of a summons as well

as to an arrest. The rule is laid down as general in Tidd's Prac. 257, that where the defendant is clearly entitled to privilege, as the arrest is irregular and unlawful, the court will discharge him upon motion, and not put him to the necessity of suing out a writ of privilege or of filing common bail. 1 Dunlap's Prac. 92, says: that this immunity, privilege from arrest, whether it be perpetual, temporary, or local, generally amounts during its continuance to a total privilege from suit. Such has been the English practice on this subject, and these were the books of reference in our courts at the time of the formation of this government, and are worthy of respect at this day.

Members of the British parliament were exempted from arrest and the service of any process out of the courts of law during the session, and for such a time thereafter, that it amounted to a total exemption from suit. The statutes of 12 and 13 Wm. III and 6 Geo. III allowed them to be sued by summons, or *distress infinite*, to compel a common appearance; but, even then, they were entitled to a reasonable time, *redeundo*. The case of *Holiday v. Pitt*, 2 Strange, 990, determined the privilege of members of parliament, after the passage of the first-mentioned act. He was arrested before his time of privilege had expired, after an adjournment. The judges discharged him entirely, although, at first, they thought he should only be discharged on common bail. From this it appears that members of the British parliament were, by common law, privileged from suit during the session, and for a time afterward.

The constitution of the United States exempts members of congress from arrest upon civil process during the session of congress, and for a reasonable time in going to and returning from the same. This constitution was adopted in September, 1787, with a full knowledge of the legal understanding of the privilege from arrest. There has not yet occurred one instance where congress

has put its own construction on this matter of privilege; but, from the American authorities hereafter referred to, there is little doubt but it includes an exemption from the service of a summons. In Story's Commentaries on the Constitution, § 859 *et seq.*, it is stated that this privilege from arrest "is conceded by law to the humblest suitor and witness in a court of justice, and it would be strange indeed if it were denied to the highest functionaries of the State, in the discharge of their public duties. It belongs to congress in common with all other legislative bodies which exist, or have existed, in America since its first settlement, under every variety of government, and it has immemorially constituted a privilege of both houses of the British parliament. It seems absolutely indispensable for the just exercise of the legislative power, in every nation purporting to possess a free constitution of government, and it cannot be surrendered without endangering the public liberties as well as the private independence of the members. This privilege from arrest privileges them, of course, against all process the disobedience to which is punishable by attachment of the person, such as a subpœna *ad respondendum, ad testificandum*, or a summons to serve on a jury, and with reason, because a member has superior duties to perform in another place. When a representative is withdrawn from his seat by a summons, the people whom he represents lose their voice in debate and vote, as they do in his voluntary absence. When a senator is withdrawn by summons, his State loses half its voice in debate and vote, as it does in his voluntary absence. The enormous disparity of the evil admits of no comparison. The privilege, indeed, is deemed not merely the privilege of the member, or his constituents, but the privilege of the house, also; and every man must, at his peril, take notice who are the members of the house returned of record."

Judge STORY refers to Jefferson's Manual, and to the

Anderson vs. Rountree.

case of *Bolton v. Martin*, 1 Dall. 296. From this book, it appears that Martin was sued by summons, while attending, as a member from Bedford county, a convention held at Philadelphia, in 1788, for the purpose of accepting the federal constitution; and that he was discharged from the suit, although the summons was not returnable for some time afterward, and probably subsequent to the adjournment of the convention, on the ground that the importance and dignity of his office entitled him to the common-law privilege from arrest or suit. This suit would have required him to neglect his public duties, while he was employing counsel, probably as much as to give bail on an arrest, and, if founded on a just claim, would have entitled the plaintiff to an execution, not only against his goods but his body. In 1790, the supreme court of Pennsylvania, in the case of *Geyer's Lessee v. Irvin*, 4 Dall. 107, decided that a member of the general assembly is undoubtedly privileged from arrest, summons, citation, or other civil process, during his attendance on the public business confided to him; and, upon principle, his suits could not be forced to a trial and decision while the session of the legislature continued. The constitution of that State contains a similar clause to that in the constitution of the United States, on which Judge Story commented as above.

The members of the legislative assembly of this Territory being elected by the people, and empowered by the organic law, to legislate on all rightful subjects of legislation, while assembled for the purpose of legislation, and for a reasonable time to go to, and return home from, the seat of government, ought to be considered in reason, and, from the nature and dignity of their office, as invested with equal immunities with the members of any other representative body. As Judge Story says, this privilege belonged to every legislative body that existed in America since its settlement; it belonged to the assemblies of the colonies before the revolution; then why not belong to

the legislative assembly of Wisconsin? It is the legislative branch of the government of this Territory, and its members are legally and inherently possessed of all such privileges as are necessary to enable them, with freedom and safety, to execute the trust reposed in them by the people who elected them. This is a parliamentary trust which entitles them to this immunity, that they may not be diverted from the public business by law suits brought against them during the session, which, though not attended with the arrest of their persons, might oblige them to attend to these law suits, and to bring witnesses from a distant county to a place whither they came, perhaps, solely, on account of that public business.

There is a statute in the State of New York, that every member of the legislature shall be privileged from arrest on civil process during his attendance at the session of the house to which he shall belong, except on process issued on any suit brought against him for any forfeiture, misdemeanor, breach of trust, etc., and for fourteen days previous to any such session, and, also, while going to and returning from such session, provided the time of such going to or returning does not exceed the fourteen days. There are no reported cases in New York giving a construction to this statute, or defining this privilege by the courts; but the legislature, in the enactment of the statute of limitations, gives us to understand that they construed the privilege from arrest to extend to a privilege from suit. In that statute it is provided, that whenever the commencement of any suit shall be prevented, by reason of any privilege of any member of either house of the legislature of this State, or of any member of either house of the congress of the United States, the time during which the same have been prevented shall not be deemed any portion of the time limited for the commencement of any suit, etc.

All the statute law we have on the subject of this privilege is an act of the Territorial legislature, on page

Anderson vs. Rountree.

157 of the Statutes of Wisconsin. It is there provided that "no member of the legislative assembly shall be liable to arrest on a service of any civil process issued by any of the courts of this Territory during any such session of the legislative assembly, or for ten days previous to the commencement or subsequent to the termination of any session ; and any member in arrest during the period of such exemption shall be entitled to an immediate discharge on any application to any judge, supreme court commissioner or justice, in any county in which such an arrest may have been made." The first clause of this statute is the same in substance as the articles in the constitutions above referred to, and to the statute of the State of New York, and must be construed in the same manner. Whether the privilege is of the common law or created by this statute is immaterial, as we have seen satisfactorily that it extends to an exemption from suit. If of the common law, there is nothing in this statute that restricts its legal meaning and operation. There is no doubt but that the legislature may, in its discretion, abridge or take away a privilege of its own members, and whenever the legislative will is to be ascertained with perfect certainty, either from the express words or manifest intent of the statute, the court will so consider it. It is a principle of the common law that privileges are not to be taken away by the general comprehensive words of a statute. *In re Bliss*, 9 Johns. 347. There is no expression in this statute having a greater tendency to confine the privilege of the members to arrest merely, than is contained in the constitution and statute of New York referred to, consequently we cannot do by construction what is not clearly authorized by the legislature. The second clause in the statute merely provides for the immediate discharge of a member actually in arrest. This suit having been brought against the defendant the next day after the adjournment of the assembly, and within the ten days allowed for returning home, the district court was right in sustaining his plea

of privilege.    It is therefore ordered and adjudged that the judgment of the district court of Dane county be and the same is hereby affirmed with costs.