STATE of Wisconsin, Plaintiff-Respondent,

v.

Sharon BENO, Defendant-Appellant.

Court of Appeals

*No. 79–1924. Submitted on briefs August 13, 1980.—*
*Decided September 19, 1980.*
(Also reported in 298 N.W.2d 405.)

78

For the defendant-appellant the cause was submitted on the brief of *Charles W. Giesen, Eisenberg, Giesen, Ewers & Hayes, S.C.*, of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.  Defendant has appealed from the order of the circuit court which denied her motion to quash a subpoena issued to her by the Wisconsin Department of Revenue and granted the state's motion for a writ of attachment against her for contempt for failing to comply with the subpoena.

We reverse the order denying the motion to quash and remand the matter for further discovery by appellant as to the good faith use by the department of its subpoena. We therefore reverse the order which granted the motion for a writ of attachment.

The circuit court found after evidentiary hearings last held in August 1977 that the department began an audit in 1977 of the income tax returns of appellant and her husband. The audit was concluded and the matter was referred to the department's intelligence section. A special agent in that section caused a subpoena to be served upon appellant, requiring her to appear before the agent and to produce her bank statements, cancelled checks and deposit slips in her accounts with United Bank of Madison for 1975, 1976 and 1977. Appellant appeared at the time and place designated but refused to comply with the subpoena and did not testify at the evidentary hearings.

The court, after looking to federal case law for guidance, rejected appellant's contention that the intelligence section's sole purpose is to collect information for criminal prosecutions. The court found that the involvement

of the section does not indicate that the civil and criminal aspects of appellant's case have diverged, and that no decision to prosecute had yet been made in appellant's case. The court also found that the subpoena had not been issued to harass or to press her or her husband to settle a collateral dispute. The court therefore denied appellant's motion to quash the subpoena.

Appellant raises the following issues:

A. Has the department abandoned the pursuit of a civil tax determination?

B. Is the purpose of the subpoena to harass appellant and her husband?

C. Does enforcement of the subpoena violate appellant's right against self-incrimination?

1. *Application Of Federal Case Law To Limitations On Use Of Administrative Subpoena*

We must first determine whether the court erred in looking to federal case law for guidance with respect to the department's use of an administrative subpoena.

The power of the department to issue a subpoena through its special agent derives from secs. 71.11(20)(b), 73.04(3) and 885.01(4), Stats.[1] Those statutes

---

[1] Section 71.11(20)(b), Stats., provides:

For the purpose of ascertaining the correctness of any return or for the purpose of making a determination of the taxable income of any person, the department may examine or cause to be examined by any agent or representative designated by it, any books, papers, records or memoranda bearing on the income of the person, and may require the production of the books, papers, records or memoranda, and require the attendance of any person having knowledge in the premises, and may take testimony and require proof material for its information. Upon such information as it may be able to discover, the department shall determine the true amount of income received during the year or years under investigation.

Section 73.04, Stats., provides in material part:

(1) If any person unlawfully fails to obey any subpoena to appear before the department of revenue or before the tax appeals commission, or unlawfully refuses to testify, such failure or refus-

do not expressly prohibit the department from using an administrative subpoena solely to collect evidence for a criminal prosecution.

Issuance of a subpoena depends, however, "upon the determination by the department, in the exercise of its prudent judgment, that it had a legitimate and relevant purpose in so doing." *Neu's Supply Line v. Department of Taxation,* 39 Wis.2d 584, 591, 159 N.W.2d 742, 746 (1968), citing *United States v. Powell,* 379 U.S. 48 (1964). That purpose is described in sec. 71.11(20)(b), Stats., as "ascertaining the correctness of any return or for the purpose of making a determination of the taxable income of any person . . . ." Prosecution for criminal liability is left to district attorneys and the attorney general. Secs. 71.11(44)(g) and (49). Because the department is not the prosecutor, the legislature intended that an investigation by the department must be for the purpose of making a determination as to the civil liability of a taxpayer. Accordingly, a subpoena issued by the department must be used for that purpose.

█

Investigation of a taxpayer by the department may produce evidence of criminal as well as civil liability.

al shall be reported to the attorney general and the department of justice shall institute contempt proceedings against such person.

. . . .

(3) The department of revenue may appoint any employe to act for it to investigate and make report to the department upon any matter upon which the department is required to act, and such employe shall have authority to hold hearings, administer oaths, take testimony and perform all other duties necessary to bring such matter before the department for final adjudication and determination.

Section 885.01, Stats., provides in material part:

The subpoena need not be sealed and may be signed and issued as follows:

. . . .

(4) By any . . . person authorized to take testimony, . . . and likewise by the secretary of revenue. . . .

The department therefore may unavoidably perform a prosecutorial function when determining the civil liability of a taxpayer. Because the statutes creating and defining the department's subpoena powers do not specify conditions under which the purpose of determining the civil tax liability will be met, and because the statutes do not expressly limit the use of a subpoena to civil tax liabilities, the scope of the subpoena power is ambiguous. Where statutory language is ambiguous, the court may look to the legislative intent, which is to be found in the language of the statute in relation to its scope, history, context, subject matter and object to be accomplished. *Wis. Environmental Decade v. Public Service Comm.*, 81 Wis.2d 344, 350, 260 N.W.2d 712, 715 (1978).

The investigative power of the department under sec. 71.11(20)(b), Stats., is similar to that conferred on Internal Revenue Service by 26 U.S.C. sec. 7602.[2] (*See* n. 1.) Criminal and civil elements under Wisconsin tax laws are intertwined because violation of either income tax law may result in criminal and civil liabilities. Nei-

---

[2] *Compare* sec. 71.11(20)(b), Stats., set forth in n. 1, with 26 U.S.C. sec. 7602, which provides in relevant part:

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary [of the Treasury] is authorized—

. . . .

(2) To summons the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, . . . to appear . . . and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

ther the department nor Internal Revenue Service may prosecute taxpayers on its own but must refer criminal prosecution to another governmental agency.[3] The recommendation or report is subject to several layers of state and federal interdepartmental review.[4]

Where Wisconsin and federal statutes are similar in language and operation and where there are no Wisconsin cases in point, appellate courts of this state have looked to federal decisions for aid in determining the intent of our statutes. *Grams v. Boss,* 97 Wis.2d 332, 346, 294 N.W.2d 473, 480 (1980) (mini-Sherman Act) ; *Wis. Environmental Decade, Inc. v. DNR,* 94 Wis.2d 263, 279, 288 N.W.2d 168, 176 (Ct. App. 1979) (Wisconsin Environmental Policy Act) ; *Joint School v. Wisconsin Rapids Ed. Asso.,* 70 Wis.2d 292, 306–07, 234 N.W.2d 289, 298 (1975) (Little Norris-LaGuardia Act) ; *State ex rel. Pflanz v. County Court,* 36 Wis.2d 550, 557, 153 N.W.2d 559, 563 (1967) (probable cause statute, sec. 968.01, Stats.). This approach has been followed in the area of taxation. *In re Estate of Kersten,* 71 Wis.2d 757, 762–63, 239 N.W.2d 86, 89–90 (1976) (inheritance tax) ; *Department of Taxation v. Siegman,* 24 Wis.2d 92, 97, 128 N.W.2d 658, 661 (1964) (income tax) ; *Department of Taxation v. La Crosse,* 11 Wis.2d 345, 349–50, 105 N.W. 2d 800, 803 (1960) (income tax exemption).

We conclude it is appropriate to look to federal case law for guidance in construing sec. 71.11(20)(b), Stats.

---

[3] The department refers cases to the district attorney under sec. 71.11(44)(g)2.a, Stats., and to the attorney general under sec. 71.-11(49), Stats. United States attorneys prosecute actions on behalf of the United States. 28 U.S.C. sec. 547(1).

[4] *See* summary of testimony by the chief of the department, intelligence section, *infra,* part 2. The federal levels of review are described in *United States v. LaSalle National Bank,* 437 U.S. 298, 312 (1978).

It is also desirable that the department have investigative power similar to that of Internal Revenue Service. That desirability is relevant to the legislative intent because sec. 71.11(44)(c)4, Stats.,[5] authorizes the exchange of certain tax information between the two revenue agencies. If the Wisconsin requirements to enforce a department subpoena were more or less strict than those to enforce an Internal Revenue Service subpoena, an uneven exchange could result which might interfere with the future flow of information between the agencies and adversely affect revenue collection in this state.[6]

*United States v. Powell*, 379 U.S. 48 (1964), held that an Internal Revenue summons (similar in function to an administrative subpoena) must be used in good

---

[5] Disclosure by this state to Internal Revenue Service is conditioned upon the existence of an agreement between the department and Internal Revenue Service. *See* sec. 71.11(44)(d), Stats. We have been provided with a copy of that agreement. The parties were given an opportunity to object to our taking judicial notice of the existence of the agreement. Because neither party has objected, we take judicial notice of the existence of the agreement. Sec. 902.01(2) and (5), Stats.

[6] The good faith test adopted in *LaSalle, supra* at n. 4, has been criticized because it offers minimum protection to the taxpayer beyond that provided by a "bright line" test based solely on whether Internal Revenue Service has recommended prosecution. *See United States v. Marine Midland Bank of New York*, 585 F.2d 36, 38 (2d Cir. 1978); Note, *Proper Standard for Enforcing an Internal Revenue Service Section 7602 Summons: United States v. LaSalle National Bank*, 20 B.C.L. Rev. 741, 759 (1979); Note, *IRS Use of the Civil Summons Power: The Institutional Good Faith Requirement—United States v. LaSalle National Bank*, 28 DePaul L. Rev. 469, 483 (1979). The desirability of a uniform state and federal test plus the additional protection given to the taxpayer favors the good faith test over the date prosecution has been recommended. A recommendation for criminal prosecution may be postponed while an investigation continues solely in aid of prosecution.

faith and that the elements of a good faith exercise are as follows:

[The Service] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed . . . [A] court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. 379 U.S. at 57–58 (footnote omitted).

*United States v. LaSalle National Bank,* 437 U.S. 298 (1978), held that statutory authority to issue an Internal Revenue Service summons solely to aid criminal investigation does not exist but noted that "criminal and civil elements are inherently intertwined" in enforcement of federal income tax laws. 437 U.S. at 309. *LaSalle* concluded:

[S]everal requirements emerge for the enforcement of an IRS summons. First, the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution, which reasonably would relate to the subject matter of the summons, be undertaken. Second, the Service at all times must use the summons authority in good faith pursuit of the congressionally authorized purposes of §7602 [of the Internal Revenue Code of 1954, 26 U.S.C. sec. 7602]. This second prerequisite requires the Service to meet the Powell standards of good faith. It also requires that the Service not abandon in an institutional sense, . . . the pursuit of civil tax determination or collection. 437 U.S. at 318.

We conclude that a subpoena issued by the department pursuant to secs. 71.11(20)(b), 73.04(1) and (3) and

885.01(4), Stats., is enforceable if it meets the criteria set forth in *Powell*, 379 U.S. at 57–58, and *LaSalle*, 437 U.S. at 318.

2. *Abandonment Not Shown*

Appellant argues that the *LaSalle* requirements have not been met because the department has abandoned pursuit of a civil tax liability. Appellant contends that, contrary to the finding of the circuit court, the intelligence section's sole function is to collect information for criminal prosecution and therefore a subpoena issued by that section is solely for criminal prosecution.

The trial court's finding that involvement of the section does not indicate that the civil and criminal aspects of appellant's tax case have diverged, is one of mixed fact and law. To the extent the finding is factual, it will remain undisturbed because it is not contrary to the great weight and clear preponderance of the evidence. *Cogswell v. Robertshaw Controls Co.*, 87 Wis.2d 243, 249–50, 274 N.W.2d 647, 650 (1979). To the extent that the finding is a conclusion of law, it is correct.

The duties of the intelligence section are not defined by statute or regulation. Indeed, we find no reference to that section in the statutes or regulations. Evidence as to its existence and how it operates was presented by appellant and the department.

The department's last biennial report to the governor and legislature which refers to the intelligence section covers a period ending June 30, 1971. That report states that the intelligence section investigates suspected violations of income, sales and excise tax laws and assists district attorneys in prosecuting violators. The evidence submitted by the department demonstrates, however, that the intelligence section is more concerned with civil liability determinations than the 1971 biennial report, taken alone, would indicate.

The chief of the intelligence section testified that a special agent reports a summary of the facts of a case to the chief following an investigation of a matter referred to the section. The agent collects whatever evidence is needed to complete the investigation, including evidence which could be used in criminal prosecutions. The agent is not required to make a recommendation as to prosecution and in most cases none is made. The chief may recommend prosecution to his superior who, if he agrees, so recommends to the division administrator who may forward the matter to the prosecuting district attorney or to the attorney general. The special agent does not assist the prosecution. The section chief testified that approximately seventy tax cases were investigated in the year ending July 30, 1979, less than twenty-five percent of which were recommended for prosecution. Once the investigation has been completed, the intelligence section refers the matter to the audit bureau for a determination of civil assessments. The agent had previously testified that the investigation of appellant and her husband had not been completed.

Appellant relies on the agent's conduct to sustain her contention that abandonment of an investigation for civil purposes has occurred as to appellant. *LaSalle,* 437 U.S. at 316, held that the question whether an investigation has solely criminal purposes depends upon the "institutional posture" of Internal Revenue Service, regardless of the agent's personal intent. Although the agent's actions do not require a finding of abandonment by the department, those actions may reflect the "institutional" motivation of the department. Accordingly, it is appropriate to inquire whether those actions are consistent with a good faith exercise by the department of its power to subpoena.

The first circumstance relied on by appellant to show abandonment is that the agent issued a subpoena to ap-

pellant's bank, knowing that retrieval of records by the bank would be time-consuming, but the agent issued a similar subpoena to appellant before the bank records were produced. The second circumstance is that the agent told a businessman whom the agent contacted not to tell anyone, including appellant's husband, about the contact. We conclude that neither circumstance compels the inference of abandonment that appellant would draw.

The trial court found that an improper motive was not demonstrated by the attempt to obtain records directly from appellant. The court made that finding because the bank records were somewhat disorganized and because the agent testified it was simpler, cheaper and quicker to obtain the original records from the taxpayer than to wait for the bank's copies. The finding is not against the great weight and clear preponderance of the evidence, the standard of appellate review as to factual findings by the court. *Cogswell v. Robertshaw Controls Co.*, 87 Wis.2d at 249–50, 274 N.W.2d at 650.

The agent testified he normally tells persons whom he interviews that the investigation is confidential and should not be discussed with anyone. That procedure is consistent with a desire to avoid embarrassment to the taxpayer or her husband. The court's finding that the agent used this procedure to protect appellant's husband is not against the great weight and clear preponderance of the evidence.

We conclude that the trial court correctly determined that abandonment of civil tax liability has not occurred.

3. *Harassment Not Shown*

Appellant argues that the department deviated from its usual and reasonable procedures in obtaining information and therefore is using its investigative subpoena power to harass.

If deviation from normal procedures somehow constitutes harassment, the trial court was not compelled to find that deviation had occurred. The agent testified that he normally attempts to get as much information as possible from the taxpayer, that he reviews the records of public offices such as the register of deeds, and that, depending upon the cooperation he gets from the taxpayer, he contacts third parties. He testified that it became necessary to contact persons who had done business with appellant's husband and that he had not departed from his normal procedure.

Appellant argues that harassment is shown by the agent's failure to obtain her bank records from the bank rather than from her. The reason for that procedure was explained and, in any event, we fail to see why obtaining records from one or the other source is harassment.

A more serious issue emerges from the testimony of a person who had done business with appellant's husband. The witness testified that when he did not obtain his records as quickly as the agent desired, the agent said that the matter could result in an audit of the witness' tax returns.

The threat to audit the tax returns of the witness to compel his cooperation, if made, was grossly improper and intolerable. However, as pointed out by the trial court, the threat goes to the propriety of the agent's conduct as to that witness and not as to appellant and her husband. No pattern or department policy of making such threats or ratification by the department of the agent's threat, if made, has been shown on this record.

The finding by the trial court that appellant and her husband have not been shown to have been harassed by the department is not against the great weight and clear preponderance of the evidence.

4. *Privilege Against Self-Incrimination Not Properly Asserted*

Appellant argues that the subpoena violates her privilege against self-incrimination, contrary to art. I, sec. 8 of the Wisconsin Constitution and the fifth amendment to the United States Constitution.

The trial court did not deal with the issue. According to the state's brief, appellant did not argue the issue to the court. Appellant has not contested that representation.

Appellant's motion charged that the subpoena was "violative of Article One, Section 11, [sic] of the Wisconsin Constitution and the First, Fourth and Fifth Amendments to the United States Constitution." The trial court was not required to decide the validity of grounds so broadly stated but never specifically argued. *See State ex rel. State Public Defender v. Percy,* 97 Wis. 2d 627, 632, 294 N.W.2d 528, 531 (Ct. App. 1980) (courts will not decide question of constitutional law unless necessary) ; *Butler vs. The State,* 102 Wis. 364, 365–66, 78 N.W. 590, (1899) (not necessary to decide questions raised but not argued).

We consider that the specific issue now argued was raised for the first time on appeal. We may but need not review such issues. *Allen v. Allen,* 78 Wis.2d 263, 270–71, 254 N.W.2d 244, 248 (1977), and cases cited. Appellant's self-incrimination issue is, however, nonreviewable for lack of facts.

The agent testified without contradiction that appellant appeared in response to the subpoena but refused to answer any question and gave no reason for her refusal. None of the subpoenaed documents were furnished. Appellant did not advise the trial court as to the nature of any specific question she was asked and did not submit

the subpoenaed documents to the trial court for its inspection.

Consequently, appellant failed to assert her right against self-incrimination in a judicially reviewable manner.[7]

Until the subject matter of the defendant's testimony and the actual questions are known, disputes as to whether the defendant has waived [her] privilege against self-incrimination as to those questions are not factually presented. . . . The appropriateness of particular questions which were never asked cannot be considered, nor can the correctness of a refusal to answer those unasked questions. *Haskins v. State,* 97 Wis.2d 408, 416–17, 294 N.W.2d 25, 32 (1980).

5. *Discovery In Support Of Motion To Quash Subpoena*

Appellant subpoenaed the files of the department relating to the investigation of appellant and her husband. She claims the right to inspect the files for evidence in support of her motion to quash the subpoena.[8] Appellant argues that the trial court erred when it refused to permit appellant to examine the files.

*United States v. Genser,* 595 F.2d 146, 152 (3d Cir.), *cert. denied* 444 U.S. 928 (1979), concluded that to vindicate *LaSalle's,* 437 U.S. 298, substantive guarantees:

At a minimum, the taxpayer should be entitled to discover the identities of the investigating agents, the date

---

[7] *See United States v. Malnik,* 489 F.2d 682, 685 (5th Cir.), *cert. denied* 419 U.S. 826 (1974), for the manner in which a taxpayer may claim that an Internal Revenue Service summons violates his right against self-incrimination.

[8] Appellant also claimed a right to inspect the department's files under the public records law, sec. 19.21, Stats. That issue was decided adversely to her by a decision and order entered January 5, 1980. No appeal was taken from that order. The issue regarding appellant's claimed rights under sec. 19.21 is therefore not before this court. *Ramsthal Adv. Agency v. Energy Miser, Inc.,* 90 Wis.2d 74, 75–76, 279 N.W.2d 491, 492 (Ct. App. 1979).

the investigation began, the dates the agent or agents filed reports recommending prosecution, the date the district chief of the Intelligence Division or Criminal Investigation Division [of Internal Revenue Service] reviewed the recommendation, the date the Office of Regional Counsel [of Internal Revenue Service] referred the matter for prosecution, and the dates of all summonses issued . . . . Furthermore, the taxpayer should be entitled to discover the nature of any contacts, relating to and during the investigation, between the investigating agents and officials of the Department of Justice.

The similarities between the structures of the department and Internal Revenue Service make it appropriate to apply the *Genser* guidelines to discovery by persons subpoenaed by the department.

During the evidentiary hearings appellant discovered the name of the investigating agent, the date the investigation began and the fact that the agent had not completed his report and had not made a recommendation. The other dates discoverable under *Genser* were therefore inapplicable. The only items in the *Genser* guidelines which appellant did not discover were the dates of all subpoenas issued by the department and the nature of contacts between the department and the attorney general's office relating to the investigation of appellant and her husband. Those contacts and their nature, or the lack of contacts, would have special significance to the issue whether the investigation took on a solely criminal purpose.

Appellant did not contend during the evidentiary hearings that she was entitled to discovery under the *Genser* guidelines. Appellant nevertheless demanded discovery. *Genser* spells out the discovery implications of the good faith rule laid down in *LaSalle*, 437 U.S. 298, a rule which we hold applies in this state. We conclude that appellant is entitled to discovery under the *Genser* guidelines.

We conclude that this matter should be remanded to afford appellant further discovery. The investigation may have continued since the August 1979 hearing and the subpoena issued by the department is outstanding and enforceable. Appellant should have discovery as to each point enumerated in *Genser*.

*Genser* noted that defendants accused of tax evasion may employ the procedures outlined in that decision to delay or frustrate justice. 595 F.2d at 152–53. The department strongly objected during the evidentiary hearing to giving appellant unlimited access to its files. Primary among its concerns was the fear that disclosure could subvert orderly future discovery should the investigation culminate in litigation. Such concern is justifiable, for there is a strong public policy in preserving statutory procedures for orderly discovery. *Compare Matter of State ex rel. Lynch v. County Ct.*, 82 Wis.2d 454, 465–66, 262 N.W.2d 773, 778–79 (1978) (generalized inspection of prosecution's files by defense at early stage of criminal proceeding is inherently harmful to orderly administration of justice). On the other hand, failure to give appellant effective discovery may preclude effective cross-examination of the department employees and interfere with her right to ascertain whether the department has exceeded the *LaSalle*, 437 U.S. 298, limits.

Appellant should be permitted to interrogate department witnesses regarding the items covered by *Genser*, 595 F.2d 146, and to request an inspection by the court of the department's files to determine whether materials in those files contradict the testimony. The court should note on the record whether it finds an apparent contradiction and give the department an opportunity to explain. After balancing appellant's need for discovery against factors indicating that disclosure would be contrary to the public interest, the court should decide whether to submit the contradictory materials to appellant for use in further cross-examination.

*By the Court.*—The order denying appellant's motion to quash the subpoena issued to her by the department is reversed and the matter is remanded for further discovery as described in this opinion. The order granting the state's motion for a writ of attachment against appellant is reversed.