STATE of Wisconsin, Plaintiff-Respondent,

v.

Sharon BENO, Defendant-Appellant,

Speaker of The Assembly Ed JACKAMONIS, and Richard White, Administrative Assistant, Intervening-Respondents.†

Court of Appeals

*No. 82–387.  Argued September 15, 1982.—Decided November 23, 1982.*
(Also reported in 327 N.W.2d 712.)

† Petition to review granted.

For the defendant-appellant there were briefs by *Charles W. Giesen* and *Eisenberg, Giesen, Ewers & Hayes, S.C.* of Madison, and oral argument by *Charles W. Giesen.*

For the plaintiff-respondent there was a brief by *Bronson C. La Follette,* attorney general and *Marguerite M. Moeller,* assistant attorney general and oral argument by *Marguerite M. Moeller,* assistant attorney general.

For the intervening respondents there was a brief by *Jon P. Axelrod, Eric A. Farnsworth,* and *Douglas L.*

*Flygt* and *DeWitt, Sundby, Huggett & Schumacher, S.C.* of Madison, and oral argument by *Jon P. Axelrod.*

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J. Defendant Sharon Beno has appealed from a writ of attachment confining her in the Dane County jail until she has testified and produced documents in accordance with a subpoena issued by the Department of Revenue.[1] That subpoena required defendant to testify before a special tax agent regarding the tax liability of Delbert L. Beno, her husband, and to produce her financial records. She refused to testify or produce the records. We vacate the writ and reverse related orders.

Defendant's first appeal from this same subpoena enforcement proceeding is reported in *State v. Beno (Beno I),* 99 Wis. 2d 77, 298 N.W.2d 405 (Ct. App. 1980). Defendant then appealed from an order denying her motion to quash the department's subpoena and granting a writ of attachment against her. One of her arguments was that the department cannot use its subpoena solely to collect evidence for a criminal prosecution. She sought discovery to determine whether that was the purpose of the department when issuing the subpoena. She contended that the writ of attachment should not issue against her until she had an opportunity to complete her discovery.

We concluded in *Beno I* that the legislature intended that a department investigation must be for the purpose of determining the civil liability of taxpayer, and that a subpoena issued by the department must be used for that purpose. 99 Wis. 2d at 82, 298 N.W.2d at 409. We reversed the order denying defendant's motion to quash the subpoena and remanded for further discovery. We

---

[1] We stayed execution of the writ pending this appeal.

also reversed the order granting the state's motion for a writ of attachment.

The attachment before us on the second appeal was issued after the trial court quashed defendant's subpoena to compel the testimony of Richard White, an aid to Assembly Speaker Ed Jackamonis, and denied her motion to quash the subpoena issued to her by the department. We permitted White and Speaker Jackamonis to intervene as respondents.

The issues on appeal revolve around defendant's attempt to compel White to testify. The specific issues are as follows:

1. Did defendant's discovery exceed our mandate in *Beno I*?

2. Is the state entitled to the "informer" privilege in Rule 905.10(1), Stats., of the Code of Evidence?

3. Do legislators and their aides enjoy a common-law immunity from testifying regarding legislative acts?

4. Is a legislative aide exempt under art. IV, sec. 15 of the Wisconsin Constitution from service of a subpoena while the legislature is in session?

5. Is a legislative aide privileged under art. IV, sec. 16 of the Wisconsin Constitution from testifying regarding statements to the aide by a person who is not a legislator or an aide which have not been shown to affect the civil or criminal liability of a legislator or an aide?

6. If White was exempt from civil process or from testifying, was the privilege waived?

The facts are undisputed. After our remand in *Beno I*, defendant's lawyer received a letter from Attorney Crandall stating that White had said that Delbert Beno was about to be "indicted" or "criminally indicted" for "tax fraud." Crandall said White made those statements during conferences in a discrimination suit. Crandall's law firm represented Assemblyman Walter Ward's sec-

retary in that suit against Ward and the State Assembly of Wisconsin.

White refused to allow defendant to depose him. She subpoenaed White, pursuant to sec. 805.07, Stats. White and Speaker Jackamonis moved to quash the subpoena on grounds of legislative privilege under the Wisconsin Constitution and the common law. They submitted affidavits stating that the information defendant sought had been revealed to White by a confidential informant during White's investigation into possible misconduct by a legislator and a legislative staff employee. Speaker Jackamonis stated that he had authorized the investigation as speaker of the assembly, as chairperson of the Assembly Organization Committee, and as co-chairperson of the Joint Committee on Legislative Organization. White and Jackamonis also contended that the identity of the informant was privileged under Rule 905.10, Stats., and that, in any event, our mandate in *Beno I* limited defendant's discovery to the department and its employees.

The trial court held that the discovery sought by defendant was proper but that White could not be subpoenaed because he possessed a legislative privilege under the Wisconsin Constitution which had not been waived. After quashing White's subpoena, the trial court heard testimony from Attorney Crandall and others regarding White's statements concerning Delbert Beno's tax problems. The court found that the testimony supported its earlier conclusion that White's testimony was privileged and that he had not waived the privilege. The court found that the testimony did not establish that White had said that the department had decided to proceed criminally against defendant's husband. The court concluded that defendant had had ample discovery and had failed to show institutional bad faith. Accordingly, the court denied defendant's motion to quash the department's subpoena and ordered her attachment.

### 1. *Mandate In Beno I Not Exceeded*

The department contends that *United States v. Genser,* 595 F.2d 146 (3d Cir.), *cert. denied,* 444 U.S. 928 (1979), and *Beno I* restrict defendant to discovery through witnesses who are Department of Revenue employees. We conclude that defendant's rights to discovery are not so limited. *Beno I* adopted the guidelines set forth in *Genser,* 595 F.2d at 152, for discovery by persons subpoenaed by the state Department of Revenue. *Beno I,* 99 Wis. 2d at 93, 298 N.W.2d at 414. We said that defendant was entitled to interrogate department witnesses regarding the information covered by *Genser* and to an in camera inspection by the court of the department's files. 99 Wis. 2d at 94, 298 N.W.2d at 415.

*Beno I* dealt with the right of a taxpayer to discovery within the department because that was the issue before us. We did not preclude discovery from sources outside the department which might shed light on the department's purpose in issuing a subpoena. The *Genser* guidelines themselves do not limit discovery to particular confines. The *Genser* guidelines were expressly denominated "minimum." 595 F.2d at 152.

### 2. *"Informer" Privilege Unavailable*

Rule 905.10(1), Stats., of the Code of Evidence provides in material part that the state "has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation."

The record does not show whether White possesses information pertinent to the department's purpose which he could reveal without disclosing the identity of an informer. We cannot rule on the applicability of Rule 905.10(1), Stats., to questions not yet put to White. The "informer" privilege cannot be interposed at this stage.

### 3. *"Common-Law" Privilege*

White and Speaker Jackamonis assert that White's testimony is protected by a common-law immunity which protects state legislators from liability for their legislative acts. They note that a common-law immunity was recognized in *Supreme Court of Va. v. Consumers Union,* 446 U.S. 719, 732 (1980). *United States v. Mandel,* 415 F. Supp. 1025, 1027 (D. Md. 1976), held that the common-law immunity of legislators has substantive and evidentiary aspects, and that the latter "affords legislators a privilege to refuse to answer any questions concerning their legislative acts in any proceeding outside of the legislature." (Footnote omitted.) The Supreme Court of the Territory of Wisconsin had occasion in *Anderson v. Rountree,* 1 Pin. 115 (1841), to discuss but found it unnecessary to decide whether the common law immunized a member of the territorial legislative council from service of a summons.

Assuming without deciding that a common-law legislative privilege or immunity once existed in Wisconsin, we conclude it has been abrogated.

Article XIV, sec. 13 of the Wisconsin Constitution provides: "Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state *until altered or suspended by the legislature."* (Emphasis added.)

Rule 905.01, Stats., of the Code of Evidence provides in material part:

Except as provided by or inherent or implicit in statute or in rules adopted by the supreme court or required by the constitution of the United States or Wisconsin, no person has a privilege to:
(1) Refuse to be a witness; or
(2) Refuse to disclose any matter; or
(3) Refuse to produce any object or writing; or

(4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

According to *Davison v. St. Paul Fire & Marine Ins. Co.*, 75 Wis. 2d 190, 202, 248 N.W.2d 433, 440 (1977), "[T]he enactment of sec. 905.01, Stats., Wisconsin Rules of Evidence, is an alteration or suspension of the common law within the contemplation of the constitution."[2] Consequently, we cannot recognize the common-law privilege asserted, unless it is provided by or is inherent or implicit in other statutes or in the rules of the supreme court, or is required by the United States or Wisconsin Constitutions, at the time the privilege is asserted. Because White and Speaker Jackamonis do not rely on a statute or a rule of the supreme court or the United States Constitution, we turn to the Wisconsin Constitution.

4. *Civil Process Immunity Under Wisconsin Constitution*

Article IV, sec. 15 of the Wisconsin Constitution provides:

Members of the legislature shall in all cases, except treason, felony and breach of the peace, be privileged from arrest; nor shall they be subject to any civil process, during the session of the legislature, nor for fifteen days

[2] The Wisconsin Rules of Evidence, including Rule 905.01, Stats., were adopted by the supreme court of this state in 1973 under the inherent and implied power of that court and under the specific rulemaking authority prescribed by statute. 59 Wis. 2d at R1–R2 (1973). We question whether the common-law privilege abrogated by Rule 905.01 has been "altered or suspended by the legislature" as provided in art. XIV, sec. 13 of the Wisconsin Constitution. The court of appeals is, however, bound by the definitive statment regarding the effect of sec. 905.01 we have quoted from *Davison v. St. Paul Fire & Marine Ins. Co.*, 75 Wis. 2d 190, 248 N.W.2d 433 (1977). *Livesey v. Copps Corp.*, 90 Wis. 2d 577, 581, 280 N.W.2d 339, 341 (Ct. App. 1979).

next before the commencement and after the termination of each session.

It is undisputed that the subpoena was served on White during the session of the legislature. We must decide whether the subpoena is "civil process" for purposes of art. IV, sec. 15 of the Wisconsin Constitution. We conclude that it is.

When interpreting the constitutional provisions of this state, *Board of Education v. Sinclair,* 65 Wis. 2d 179, 222 N.W.2d 143 (1974), governs our analysis. *Buse v. Smith,* 74 Wis. 2d 550, 568, 247 N.W.2d 141, 149 (1976). We must take into account the plain meaning of the words in the context used, the constitutional debates and practices in existence in 1848, and the earliest interpretation by the legislature as manifested in the first law passed following the adoption of the constitution. *Id.*

"Civil process" is not defined in the Wisconsin Constitution. Reasonable persons can differ regarding its meaning, as applied to a subpoena. Accordingly, the term is ambiguous and the plain meaning rule does not apply.

Defendant relies on an analysis of the 1848 constitutional debates. During the debates on the article entitled, "Legislative," Mr. Chase moved to strike out the fifteenth section, exempting members from arrest. Mr. Estabrook then moved "to amend the amendment so as to strike out that part of it which privileged members of the legislature from civil actions." *Journal of the Convention to Form a Constitution for the State of Wisconsin* at 212 (Tenney, Smith and Holt 1848). Mr. Estabrook's "amendment to the amendment" was rejected. *Journal* at 212. It is difficult to find significance in Mr. Estabrook's references to "civil actions" in this context.

We turn to the practices in existence in 1848 and to the earliest interpretations of this section by the legis-

lature as manifested in the first law passed following adoption of the constitution. Section 1, ch. 87, Rev. Stats. 1849, provided in relevant part:

The several courts of this state having a seal, are courts of record, and they shall respectively have power:
1. To issue process of subpoena, requiring the attendance of any witness residing or being in any part of this state, to testify in any matter or cause pending or triable in such courts:
. . . .

Section 1, ch. 87, Rev. Stats. 1849, establishes to our satisfaction that the first legislature following the adoption of the constitution assumed that the issuance of a subpoena was a type of civil process. We recognize that sec. 1, ch. 87, Rev. Stats. 1849, is not literally a construction of art. IV, sec. 15 within the meaning of *Buse, supra.* However, because the Revised Statutes of 1849 are the first of our statutes to be enacted following the constitution, it is reasonable to rely on those statutes as reflecting the practice when the constitution was adopted to assist our interpretation of a word used by the authors of the constitution in 1848.

Accordingly, we conclude that a legislator is immunized by art. IV, sec. 15 of the Wisconsin Constitution from being subpoenaed during and fifteen days before and after a session of the legislature. The question is whether an aide to a legislator shares the same privilege.

Resolution of that issue depends on the rationale for the privilege. That rationale is discussed in *Doty v. Strong,* 1 Pin. 84 (1840), and *Anderson, supra.* In *Doty,* James D. Doty was served with a summons in a civil action. He unsuccessfully sought a continuance on grounds that he had been absent on public business as a territorial delegate in congress. Judgment was rendered against him. The territorial supreme court reversed the judg-

ment, holding that Doty was exempt from civil process under art. I, sec. 6, cl. 1 of the United States Constitution which provides that, with exceptions, senators and representatives in congress are privileged from arrest during their attendance at the session of their respective houses, and in going to or returning from the same. The court said:

The reason of this provision is obvious. The people elect their representatives to congress to protect their rights and advance their interests, which should not be jeoparded by the arrest of their representative for debt or private contract of his own, and it is equally necessary that his rights and interests should be protected while absent in the public service.

In order to render this provision available to the extent of its necessity, it will not do to construe the words *privilege from arrest* [sic] in a confined or literal sense. A liberal construction must be given to these words upon principle and reason. It is just as necessary for the protection of the rights of the people that their representative should be relieved from absenting himself from his public duties during the session of congress, for the purpose of defending his private suits in court, as to be exempt from imprisonment on execution. If the people elect an indebted person to represent them, this construction of the constitution must also be made to protect his rights and interests, although it may operate to the prejudice of his creditors; but the claims of the people upon his personal attendance are paramount to those of individuals, and they must submit. . . .

1 Pin. at 87–88 (emphasis in original).

In *Anderson, supra,* the territorial supreme court affirmed judgment for the defendant who was a member of the territorial legislature where process had been served upon him in a civil action on the day after the assembly adjourned. The court quoted from *Story's Commentaries on the Constitution,* sec. 859 *et seq.,* to the effect that a legislative privilege against arrest is

indispensable for the exercise of the legislative power and that:

> This privilege from arrest privileges them, of course, against all process the disobedience to which is punishable by attachment of the person, such as a subpoena *ad respondendum, ad testificandum,* or a summons to serve on a jury, and with reason, because a member has superior duties to perform in another place. When a representative is withdrawn from his seat by a summons, the people whom he represents lose their voice in debate and vote, as they do in his voluntary absence. When a senator is withdrawn by summons, his State loses half its voice in debate and vote, as it does in his voluntary absence. The enormous disparity of the evil admits of no comparison. . . .

1 Pin. at 120.

The rationale discussed in *Doty* and *Anderson, supra,* for exempting a legislator from civil process does not apply with equal force to exempting a legislator's aide from civil process. Although legislative aides perform important functions, the legislator may vote even if the aide is absent. If an aide is temporarily kept from his or her duties by an arrest, a civil suit or a subpoena, the aide may be replaced without impairing the legislator's vote. Exempting an aide from civil process is not indispenable to the exercise of legislative power.[3] We con-

---

[3] The constitutions of several other states provide legislators with an immunity from civil process apparently as broad as art. IV, sec. 15 of the Wisconsin Constitution. *See* Alaska Const. art. II, sec. 6; Ariz. Const. art. IV, part 2, sec. 6; Cal. Const. art IV, sec. 14; Ind. Const. art. IV, sec. 8; Kan. Const. art. 2, sec. 22; Or. Const. art. IV, sec. 9; and Wash. Const. art. II, sec. 16 (legislators not subject to civil process); Mass. Const. Part the Second, sec. 3, art. X; N.H. Const. Part Second, art. 21st (legislators shall not be held to bail on mesne process); Mich. Const. art 4, sec. 11 (legislators privileged from civil process); and Idaho Const. art. III, sec. 7 (legislators not liable to any civil process).

clude that the privilege exempting a legislator from civil process under art. IV, sec. 15 of the Wisconsin Constitution does not extend to the legislator's aide.

5. *Immunity Under Debate Clause*

Article IV, sec. 16 of the Wisconsin Constitution provides: "No member of the legislature shall be liable in any civil action, or criminal prosecution whatever, for words spoken in debate." Like sec. 15 of the same article, sec. 16 provides legislators with an immunity. Section 16 creates an immunity independent of immunity from civil process. The immunity created by sec. 16 may be asserted whether or not the legislature is in session.

White and Speaker Jackamonis rely upon federal case law to provide them with an immunity on the facts before us, which they assert arise out of legislative acts. *Gravel v. United States,* 408 U.S. 606, 616 (1972), held that a senator and his aide were privileged under the speech and debate clause of the United States Constitution, art. I, sec. 6, cl. 1, from testifying regarding the conduct of the senator or his aides at or relating to a senatorial subcommittee meeting.[4] The *Gravel* court

---

*Compare* Conn. Const. art. third, sec. 15 ("in all cases of civil process, be privileged from arrest"); Nev. Const. art. 4, sec. 11 ("privileged from arrest on civil process"); R.I. Const. art. IV, sec. 5 ("The person of every member of the general assembly shall be exempt from arrest, and his estate from attachment in any civil action . . . and all process served contrary hereto shall be void."); S.C. Const. art. III, sec. 14 ("protected in their persons and estates during their attendance"); Va. Const. art IV, sec. 9 ("not be subject to arrest under any civil process"). Our research has not disclosed a judicial interpretation of any of those provisions which extends the privilege to a legislative aide.

[4] Specifically, *Gravel v. United States,* 408 U.S. 606 (1972), held that protection afforded by the speech or debate clause of the United States Constitution forbade the questioning of any witness, including a senatorial aide, concerning the senator's conduct or that of his aides at a senate subcommittee meeting, the motives and purposes behind the senator's conduct or that of his aides at

held that the purpose of the federal constitutional privilege is to "prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary," and that a legislative aide enjoys the same privilege as the legislator. 408 U.S. at 617 (citation omitted). *Doe v. McMillan,* 412 U.S. 306, 312 (1973), held that the speech and debate clause protected legislators and their staff from liability for introducing material at committee hearings where the petitioner sought to predicate liability on acts which were legislative. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 507 (1975), held that the speech and debate clause immunized members of congress and subcommittee staff from an action for an injunction against issuing a subpoena to gather information for purposes of a legislative investigation.

We are not at liberty to rely on the federal case law cited to us. We may not interpret art. IV, sec. 16 of the Wisconsin Constitution solely on the basis of the speech and debate clause of the United States Constitution. The state and federal clauses are different.[5] Because of those differences, construction of the federal clause does

that meeting, communications between the senator and his aides during the term of their employment and related to that meeting or any other legislative act of the senator, and, except as relevant to a possible third-party crime, concerning any act, in itself not criminal, performed by the senator, or his aides in the course of their employment, in preparation for the subcommittee meeting. 408 U.S. at 628–29. The *Gravel* court noted that no constitutional privilege shielded the aide from questions "as long as no legislative act is implicated by the questions." 408 U.S. at 628 (footnote omitted).

[5] Article I, sec. 6, cl. 1 of the United States Constitution provides in relevant part that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."

not necessarily provide a "clear implication as to the meaning of the state clause." *State ex rel. Steiger v. Eich,* 86 Wis. 2d 390, 392, 272 N.W.2d 380, 381 (1978).

We therefore turn to the *Sinclair, supra,* method to interpret our state constitution described in *Buse,* 74 Wis. 2d at 568, 247 N.W.2d at 149, which we applied in interpreting art. IV, sec. 15 of the Wisconsin Constitution. We first examine the plain meaning of the words in art. IV, sec. 16. In ascertaining the meaning of common and ordinary words, we may resort to dictionary definitions. *Kollasch v. Adamany,* 104 Wis. 2d 552, 563, 313 N.W.2d 47, 53 (1981). *Webster's Third New International Dictionary* (unab. 1976) defines "liable" as being "bound or obligated according to law." Employing that definition, "liable" in art. IV, sec. 16 is ambiguous. "Liable" in that context may mean bound or obligated according to law in matters to which the legislator is a party. It may also mean bound by law in matters to which the legislator is not a party. The duty to obey a subpoena to testify in a matter to which the legislator is not a party is an example of the latter meaning.

The next step in the *Sinclair* analysis is to examine the words used in sec. 16 in the context of the constitutional debates. Section 16, as initially proposed, provided that "[n]o words spoken in debate in either house of the legislature, shall be the foundation of any action, complaint or prosecution whatever." *Journal* at 118. An amendment to phrase the section as it is presently worded, with other proposed amendments, was submitted to the convention with a report by Mr. Dunn, a member of the Committee on Revision and Arrangement. *Journal* at 452. That report included the following remarks by Mr. Dunn concerning the proposed amendments:

[T]he committee in discharging their duty had examined the several articles with scrupulous care, and had suggested several verbal amendments, in which they had

varied the phraseology by selecting such words as conveyed the meaning most fully, and as were most generally used in constitutional law. They had also made some grammatical and orthographical corrections, but in no case changed the meaning or sense.

*Journal* at 454.

Under the circumstances, the history of art. IV, sec. 16 shows that the privilege against being "liable in any civil action, or criminal prosecution whatever, for words spoken in debate," means that words spoken in debate shall not "be the foundation of any action, complaint or prosecution whatever."[6] We read the earlier version, and therefore the present sec. 16, as intended to protect legislators from being subjected to liability for damages or other civil relief or for criminal penalties for words used in debate.

---

[6] The speech or debate clauses of several other state constitutions are limited to language similar to that in the present art. IV, sec. 16 of the Wisconsin Constitution or as originally proposed to the constitutional convention. *See* Ariz. Const. art. IV, part 2, sec. 7; Md. Const. art. III, sec. 18; Neb. Const. art. III, sec. 26; and Wash. Const. art. II, sec. 17 (legislators shall not be liable in any civil or criminal action or prosecution for words spoken in debate); Mass. Const. Part the First, art. XXI; N.H. Const. Part First, art. 30th; Vt. Const. ch. I, art. 14th (speech and debate in the legislature cannot be the foundation of any accusation or prosecution, action or complaint, in any other court or place whatsoever). We find no reported case deciding whether the privilege afforded by these provisions is limited to protecting a legislator from being subjected personally to civil liability or criminal penalties or should be construed as broadly as the federal constitution speech or debate clause. For a possible exception *see* *Blondes v. State*, 294 A.2d 661, 666 (Md. App. 1972) (Md. Const. art. III, sec. 18, and art. 10 of the Maryland Declaration of Rights, which provides "[t]hat freedom of speech and debate, or proceedings in the Legislature, ought not to be impeached in any Court of Judicature" construed together to provide a privilege coextensive with that of art. I, sec. 6, cl. 1 of the United States Constitution).

Defendant proposes to compel testimony by a legislative aide regarding a statement by a third party to the aide concerning possible state criminal action against a person who is neither a legislator nor a legislative aide. We hold that art. IV, sec. 16 of the Wisconsin Constitution does not immunize a member of the legislature or a legislative aide from being required by a court to disclose that information. Nothing said by a legislator or legislative aide is involved, so far as shown by the present record. No civil or criminal liability can attach, so far as the record discloses, to a legislator or legislative aide because of the communication.

Because of our disposition, we need not determine whether a legislative privilege has been waived.

6. *Right to Further Discovery*

The record substantiates the trial court's finding that the testimony by Attorney Crandall and others does not establish that White had said the department had decided to proceed criminally against Delbert Beno. The record demonstrates, however, that defendant should have further discovery through White's testimony regarding the department's purposes.

Crandall testified that Delbert Beno was a minor witness in Crandall's case against Assemblyman Ward. According to Crandall, White said Delbert Beno was not a credible witness. Amplifying on the point, White said Beno was about to be "indicted on tax fraud." White did not say where he obtained that information. A State Personnel Commission employee testified that White told him that state or federal tax representatives were investigating tax fraud by Delbert Beno, and that White said he learned that from the department's representatives. The recollections of other persons as to what White said are no substitute for White's testimony.

### 7.  Conclusion

The state is concerned that further discovery will delay the department's tax investigation. The subpoena issued to defendant involves tax records for 1975, 1976 and 1977. Delay may prejudice the collection of unpaid taxes. The state's concern may be real, but defendant has shown enough to justify further discovery as to whether the Department of Revenue is pursuing its investigation for the purpose of making a determination as to the civil liability of defendant and her husband.

We hold that the trial court should have not quashed defendant's subpoena to compel White to testify. Our ruling requires us to vacate the attachment against defendant and reverse the order denying her motion to quash the subpoena issued to her by the department. The ruling on the latter motion should abide the results of defendant's further discovery.

*By the Court.*—The writ of attachment against defendant Sharon Beno is vacated; the order quashing the subpoena issued to Richard White is reversed; and the order denying defendant's motion to quash the subpoena issued to her is reversed.